No. 45,854

STATE OF KANSAS, *Appellee,* v. HAROLD DEAN SCRUGGS, *Appellant.*

(479 P. 2d 886)

Opinion filed January 23, 1971.

*Robert M. Brown,* of Topeka, argued the cause and was on the brief for the appellant.

*Harland K. Rieger,* assistant county attorney, argued the cause, and *Kent Frizzell,* attorney general, and *Gene M. Olander,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Harold Dean Scruggs was convicted by a jury of the offenses of robbery in the first degree and larceny of an automobile. Consecutive statutory sentences were imposed. Mr. Scruggs now appeals.

The alleged robbery occurred at a Quick Shop food store and the auto larceny at the Jim Clark Motor Company, both in Topeka.

Appellant attacks the sufficiency of the evidence to sustain the verdict as to both counts. His principal challenge on the larceny charge is a lack of showing of ownership of the stolen automobile. He relies heavily on the fact no certificate of title for it was produced at trial. The contention borders on the frivolous. We will not detail the evidence except to say ownership of the car in the motor company was shown by the oral testimony of one of its salesmen and its sales manager, as alleged in the information. On Monday morning January 20, 1969, the vehicle was missing from the sales lot where it was supposed to be. Consent to its removal was never given. On the previous Saturday afternoon the particular

vehicle had been demonstrated to appellant by a company salesman, and appellant had, under a fictitious name, bargained for its purchase and caused the sales manager to prepare a sales contract for it. Appellant had left with a promise to return when he could make the necessary financial arrangements to complete the transaction. The state's evidence showed appellant was in possession of the car immediately before and following the January 19th robbery, driving it through several states and in Mexico until March 19, 1969, when he was apprehended in it in Lompoc, California. He had changed the license plates several times; however, the automobile was identified by its serial number as the vehicle missing from the motor company. Meanwhile, the company had surrendered its certificate of title for the vehicle to its insurer in order to recover on the loss. Ownership and lack of consent to the taking were definitely shown.

The state's evidence showed the following as to the robbery. On January 19, 1969, at a few minutes before the 11:00 p. m. closing hour two men entered the Quick Shop food store at 3339 Adams where a store employee and her husband were present. One of the two men produced a pistol and announced a "stickup". The husband was told to put his hands on the counter and not to move. One of the bandits ripped out the telephone while the other compelled the employee to put the contents of the cash register into a grocery sack. After telling the employee and her husband to lay on the floor for fifteen minutes the bandits fled with the money. The employee and her husband positively identified appellant as one of the culprits. (It appears the other robber was subsequently killed in an attempted robbery in the state of Washington.)

Additionally, an accomplice, the wife of the other bandit, was granted immunity and testified as a prosecution witness. Her testimony was that on the night in question appellant, while driving the automobile stolen from the Jim Clark company, picked up her husband and herself; their plans were to go either to Canada or California; about 11:00 p. m. appellant drove the car past the Quick Shop store in question and parked it near a church about a block back of the store; appellant and her husband departed toward the store, ostensibly for cigarettes; in a few minutes they returned, running, laughing and talking about the lady being scared and telling her husband not to do anything; the two had a paper sack when they returned; the three immediately drove to Kansas City.

The witness also related their subsequent travels in the stolen automobile. Appellant relies on evidence he produced in an effort to impeach this witness; however, evaluation of all the testimony was purely jury work. The prosecution's evidence amply supported the verdict of guilt as to each count.

Appellant complains that the trial court, without request from anyone, gave the so-called deadlocked jury instruction prior to any deadlock by the jury. The challenged instruction, given at the close of the evidence along with the court's other instructions, was as follows:

"This case has been exhaustively and carefully tried by both sides and has been submitted to you for decision and verdict. Although under the law a verdict must be unanimous and should be based upon the honest judgment and conviction of each individual juror, and not upon mere acquiescence for the sake of expediency, it is still necessary that you examine the matters submitted to you with the proper regard for, and deference to, the opinion of each other.

"There is no reason to think that a jury better qualified than you would be chosen in the future to try this case. Therefore, each of you should listen to the arguments of the others with an open-mindedness characteristic of a disposition to be convinced by them; if you differ in your views of the evidence, you should all be led by such differences of opinion to scrutinize the evidence more closely and to re-examine more closely the grounds of your opinion.

"In conferring you should lay aside all mere pride of opinion and you should bear in mind that the jury room is no place for espousing and maintaining, in a spirit of controversy, either side of a cause. The aim to be kept in view is the truth as it appears from the evidence, which evidence you must consider with the instructions."

Its similarity to PIK Instruction 10.20, entitled "Deadlocked Jury", is readily apparent. Our long-standing concern about the possible coercive impact from the use of such an instruction under certain circumstances (2 Hatcher's Kansas Digest, rev. ed., Criminal Law, § 160; 4 West's Kansas Digest, Criminal Law, § 865) eventually culminated in our suggestion in *State v. Oswald*, 197 Kan. 251, 417 P. 2d 261, that:

". . . this instruction quite properly could have been given at the time of the original charge. If so given all question with regard to the coercive effect of the same would be removed. The practice of lecturing a jury in a criminal case after it has reported a failure to agree is not to be commended and under circumstances differing from the present case might well be held coercive and erroneous as invading the province of the jury." (p. 261.)

Obviously when such an instruction is given prior to the commencement of deliberations the inherent danger of coercion is dis-

sipated, it being addressed not to a minority after a deadlock has been reached but to all jurors alike at the outset. All are charged to consult with one another. No burden of reexamination of view is placed upon a minority. It is appropriate for a trial court to instruct a jury initially as to the nature of its duties in the course of its deliberations. We think that is all the court did here. The instruction given was modified from that found in PIK by eliminating reference to expense of trial and it contains nothing that could be construed as a mandate that a decision be reached. Appellant argues the instruction encourages a juror to abandon his own honest judgment in deference to the opinion of another. We cannot so construe it. It specifically states the verdict "should be based upon the honest judgment and conviction of each individual juror, and not upon mere acquiescence for the sake of expediency". We approve the instruction (see ABA Standards Relating to Trial by Jury, § 5.4 (a); also Instruction 8.11 of Jury Instructions and Forms For Federal Criminal Cases, 27 FRD 97-98).

Finally, appellant argues he was prevented from having a fair trial because of the actions of a witness in calling to the attention of a juror the fact he was a witness in the case. The matter was fully explored by the trial court upon hearing of appellant's motion for new trial. Appellant, the witness and the juror testified. The witness, a former bondsman for appellant, was subpoenaed by appellant but apparently did not testify at trial. Appellant's version was he observed the prospective witness speaking to a juror during a recess but could hear no conversation; he observed the juror wink at the witness and later, when the verdict of guilty was returned, the juror gave him, the appellant, "a real, real, vicious, dirty look". According to the juror and the witness nothing inappropriate occurred between them; they were acquainted with each other by sight as the witness lived near the parents of the juror's wife; they had no conversation as to the merits of the case; the witness asked the juror if he was still in the business of hauling hay; in response to a question by the juror as to why he was present at the trial, he replied he was a witness; he talked to appellant immediately after speaking with the juror; facial communications were denied.

Implicit in the trial court's denial of motion for new trial was a

finding of no prejudice to appellant in the contact. Nothing in the record justifies disturbing that finding.

The judgment is affirmed.

APPROVED BY THE COURT.