No. 58,479

STATE OF KANSAS, *Appellee*, v. LEONARD L. BELL, *Appellant*.
(718 P.2d 628)

Opinion filed May 2, 1986.

*Dale V. Slape*, of Wichita, argued the cause and was on the brief for appellant.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: Leonard L. Bell appeals from his Sedgwick County jury conviction of felony murder, K.S.A. 21-3401. He was sentenced to life imprisonment to be served consecutive to a life sentence previously imposed upon him in the State of Colorado for a murder committed in that jurisdiction. The issues presented are whether the trial court erred (1) in admitting into evidence certain Denver, Colorado, police records and allowing testimony from such records; (2) in admitting into evidence the record of Bell's Colorado murder conviction; (3) in admitting into evidence photographs designated as State's exhibits Nos. 10 and 22; and (4) in refusing to give a jury instruction proposed by the defendant. Defendant also contends that the evidence is insufficient to support his conviction.

The evidence discloses that during the early morning hours of May 15, 1977, Julie Ladd was murdered in an exercise area located in the basement of the dormitory in which she lived on the campus of Wichita State University. Other occupants of the dormitory testified that they heard screams for help; these lasted several seconds and then stopped. Apparently no one investigated during the night. The victim's body was found at approximately noon that day.

The victim received a number of stab wounds, some rather superficial cutting wounds, but others of major significance. There were parallel cuts running vertically from the top of her breastbone to approximately two inches below it. One of these wounds was not deep, but the other was approximately four and one-half inches deep. There were four parallel cuts down the cartilage and ribs around her breastbone, and her heart was penetrated in two separate areas. The post-mortem examination also disclosed evidence of post-mortem stretching of the lining of

the vagina, which, in the coroner's opinion, would have been caused by penetration by a finger, sexual organ, or other blunt object, after death.

There was testimony that Bell had lived in Wichita and had been employed at a meat packing plant before the murder. Bell and other men who worked in the plant were known to carry boning and other knives with them when they left the plant. Four witnesses testified that each of them heard Bell admit killing a girl in a dormitory at Wichita State University during a burglary. The statements were made on the evening after the occurrence, and they were apparently occasioned by television news reports of the bizarre killing. Bell said that he had stabbed the victim and he described generally the wounds inflicted. Two of the witnesses said that he described the clothing worn by the victim and one testified that Bell stated that he had had sex with the victim after her death. A description of the wounds and of the victim's clothing had not been reported by the new media. Also, the media had mistakenly reported that the victim had not been sexually assaulted.

The State also presented evidence that Bell was charged with the 1981 felony murder of Cheryle Underwood in Denver, Colorado, and that he entered a plea of guilty to felony murder, which plea was accepted in that case on December 15, 1982. We will discuss that conviction in more detail later in this opinion.

At the conclusion of the Sedgwick County trial, the jury found Bell guilty of first-degree murder occurring during the commission of a felony, a burglary. The court sentenced him to a term of life imprisonment, to be served consecutively to the Colorado sentence.

Defendant first contends that the trial court erred in admitting exhibit No. 45, copies of the information and the journal entry in the Colorado murder case. That offense was committed in November 1981, approximately four and one-half years after the commission of the homicide at Wichita State University. While defendant objected to that exhibit at trial, he stipulated to its authenticity and he does not challenge the authenticity of the record of that charge and conviction on appeal.

The State called as a witness Detective Estrada of the Denver Police Department. Estrada was the detective assigned to head the investigation into the death of Cheryle Underwood. Estrada

had visited the scene, observed the body and the wounds thereon, and directed and coordinated the investigation. During Estrada's testimony, the State offered exhibits Nos. 46, 47, 48 and 49. Exhibit No. 46 is a photograph of the body of the Colorado victim, Cheryle Underwood. The trial court held that the picture was prejudicial and cumulative in nature considering the testimony of the officer, and did not admit the picture into evidence. Thus, there is no error with reference to exhibit No. 46.

Detective Estrada testified that exhibit No. 47 is a true and accurate copy of the official coroner's report of death of the Colorado victim, an official document kept with the police records and used during the course of the Colorado investigation of the murder of Cheryle Underwood. Similarly, the detective identified exhibit No. 48 as a supplemental report by a Denver detective, Rennie Jaramillo, and he identified exhibit No. 49 as a transcribed statement given by one Frank Parker to Detective Jaramillo in the presence of several other people, including a reporter, during the course of the Denver investigation. These exhibits were also identified as official police reports and documents maintained by the police department during the course of the investigation. The trial court, over defense objections, admitted exhibits Nos. 47, 48 and 49 into evidence, but directed that they not be sent to the jury. However, the trial court permitted Detective Estrada to testify as to certain facts contained in those exhibits.

With reference to exhibit No. 47, Detective Estrada was permitted to testify that the victim had two chest wounds, one over six inches deep which penetrated the heart, and that the coroner's report indicated that the victim had had sexual relations. The only objection to the admission of the coroner's report was that it was hearsay and that it should not be admitted through the testimony of a police officer who was not present at the autopsy, did not perform it and knew nothing about it. The trial court found that the document was an official document admissible under K.S.A. 60-460(o). There were certain statements in the report which the court determined were prejudicial and for that reason the trial court did not permit the document to be exhibited to the jury.

In this state, a coroner's report is required to be filed with the clerk of the district court of the county in which the death occurs.

K.S.A. 19-1032. As such, a coroner's report becomes an official public document. In Colorado, the coroner is a public official. Colo. Rev. Stat. § 30-10-601 *et seq.* (1977). The Colorado statutes authorize the coroner to make all public inquiries regarding the cause and manner of death of any person in his jurisdiction who has died from external violence, or under suspicious circumstances. The coroner is authorized to conduct a post-mortem examination of the body of the deceased. He may make an investigation or he may convene a coroner's jury and hold an inquest. As a part of his investigation, post-mortem examinations may be conducted by licensed physicians. Any report of an autopsy made by a licensed physician upon the body of a person who has died from external violence may be requested by and furnished to the coroner. A certificate of death is filed by the coroner with the registrar. See Colo. Rev. Stat. § 30-10-606 (1977 and 1985 Supp.). It thus appears that the autopsy report of a coroner in Colorado is authorized by statute and is an official record. No question is raised as to the accuracy or authenticity of the exhibit. We conclude that it was admissible under K.S.A. 60-460(o) and that the trial court did not err in admitting exhibit No. 47.

The primary target of defendant's objection to the evidence is leveled at exhibits Nos. 48 and 49. These concern conversations that Detective Jaramillo had with Frank Parker. Parker allegedly told the detective that Bell admitted to him that he had killed Cheryle Underwood. This admission was made within twenty-four hours of the homicide. Defendant objected to these exhibits on the basis that there was no way he could cross-examine the witness Parker, and the admission of these exhibits violated his right to confrontation. Defendant also contended that the exhibits were hearsay. The trial judge ruled that the exhibits were official records, an exception to the hearsay rule. He directed the prosecutor to exclude portions of exhibit No. 48 which the court found had potential for prejudicial effect, and then he admitted both documents into evidence. He did not let the documents go to the jury, however, but permitted the witness to testify from them. The testimony of the witness concerning these records is short. It reads as follows:

> "Q.  All right. With regard to those two exhibits I have a couple of questions for you. Do those records indicate, sir, whether or not the defendant

Leonard Bell told someone about the commission of the murder of Cheryle Underwood within twenty-four hours after the crime happened?

"A. Yes, he did.

"Q. What is the name of the person he told these things to?

"A. Frank Parker.

"Q. All right. Did the defendant Bell say in any of those exhibits why he went into Cheryle Underwood's house?

"A. He said he went in to burglarize the place.

"Q. In either of those exhibits, does the defendant, does it reflect that the defendant Bell told Mr. Parker as to whether or not he had sexual relations with Cheryle Underwood?

"A. Yes, he did.

"Q. What does it say?

"A. I don't remember exact words, but he did say he did have sexual intercourse with her.

"Q. All right. Do those records indicate whether or not the defendant Bell told Frank Parker whether or not he stabbed Cheryle Underwood?

"A. Yes, he did.

"Q. What do they indicate?

"A. It indicates that he used a knife and that he stabbed her twice.

"Q. Thank you."

In *State v. Myers*, 229 Kan. 168, 625 P.2d 1111 (1981), we discussed the relationship between the right to confrontation and the hearsay rule and its exceptions. We said:

"In determining the admissibility of hearsay evidence under one of the exceptions to the hearsay rule, a trial court must also consider the application of the confrontation clauses as contained in the Sixth Amendment and also in Section 10 of the Bill of Rights of the Kansas Constitution. Both constitutions guarantee to a defendant in a criminal case the right to be confronted with the witness against him. In the recent case of *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), the United States Supreme Court considered the relationship between the confrontation clause and the hearsay rule with its many exceptions. The court recognized that hearsay evidence may be admissible in a criminal trial, under certain exceptions to the hearsay rule, without violating the right of confrontation. The court emphasized that the confrontation clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by the provision is the right of cross-examination.' Simply stated, the court recognized that the impact of the right of confrontation is to place limitations on the admissibility of hearsay evidence in criminal cases which are not applicable in civil cases.

"In *Ohio v. Roberts*, the court stated that the confrontation clause operates in two separate ways to restrict the range of admissible hearsay. The first is a rule of necessity; that is, the prosecution must either produce or demonstrate the unavailability of declarant whose statement it wishes to use against the defendant. The second aspect operates once a witness is shown to be unavailable; then the clause countenances only hearsay marked with such trustworthiness that

'there is no material departure from the reason of the general rule,' which is to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence. Thus, said the court, for hearsay testimony to be admissible, there must be a showing of 'indicia of reliability' so as to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.' In the opinion, Justice Blackmun summarized the requirements of the confrontation clause in the following language:

" 'In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' p. 608." 229 Kan. at 171-72.

Defendant argues that the trial court did not require the State to demonstrate that Detective Jaramillo and Frank Parker were unavailable, and there is no proof of their unavailability in the record. There is no question that the State failed to demonstrate that these men were not available. There is an indication in the record that Detective Jaramillo was under subpoena in Colorado, but there is nothing at all indicating the availability, or lack thereof, of Frank Parker. We conclude that the defendant's right to confrontation was violated. The issue then is whether the testimony of Detective Estrada, which we have set forth above, and which was improperly admitted, constituted prejudicial error. Errors which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining do not require reversal when substantial justice has been done. See *State v. Mitchell,* 234 Kan. 185, 196, 672 P.2d 1 (1983), and cases therein cited.

In *State v. Knapp,* 234 Kan. 170, Syl. ¶ 7, 671 P.2d 520 (1983), we set forth the rule as follows:

"In determining that a federal constitutional error constitutes harmless error, a court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt."

Estrada's testimony, when carefully examined, indicates that the defendant admitted the 1981 murder of Cheryle Underwood. The defendant admitted that he committed that murder when he pled guilty in Colorado to the crime there charged. Detective Estrada testified that the defendant admitted to Parker that he went to the victim's home to burglarize it. The commission of or

the attempt to commit burglary was an element of the felony-murder charge which defendant had admitted when he entered his plea of guilty in Colorado. Estrada testified that the defendant admitted to Parker that he stabbed the victim twice. That the victim was stabbed twice or more and that her heart was penetrated, causing her death, is fully established by the coroner's report. That the defendant caused her death was admitted by his guilty plea in Colorado. Detective Estrada testified that the defendant admitted that he had had sexual relations with the victim. Again, the fact that the victim had been sexually assaulted is established by the report of the coroner.

The only item included within Detective Estrada's testimony which the defendant did not admit in his plea of guilty in Colorado, or which was not established by the coroner's report, was his statement that defendant made his admission to Parker within twenty-four hours of the time the offense was committed. Since the defendant admitted committing the offense when he entered his plea of guilty to the felony-murder charge in Colorado, we conclude that the admission of Estrada's testimony, based upon exhibits Nos. 48 and 49, constituted harmless error.

Defendant also challenges the admission of the Colorado conviction on the basis that it shows the commission of an offense several years after the murder with which he is here charged. We have previously held that other crimes evidence is not inadmissible simply because the acts were committed after the act constituting the basis for the charge. See *State v. Darling*, 197 Kan. 471, Syl. ¶ 3, 419 P.2d 836 (1966), where we said:

"The admissibility of evidence of similar offenses, when relevant to prove a material fact at issue concerning the offense charged, is unaffected by the fact that the similar offense occurred subsequent to the offense with which the defendant is charged. The time of the similar offense and its relation to the offense charged goes only to the weight of the evidence."

We have reviewed the record and the testimony concerning the Colorado offense, have compared the acts there committed with those of the present offense, and conclude that there was substantial similarity between the offenses.

In *State v. Williams*, 234 Kan. 233, Syl. ¶ 1, 670 P.2d 1348 (1983), we said:

"Where a prior conviction is offered pursuant to K.S.A. 60-455 for the purpose of proving identity, the evidence should disclose sufficient facts and·circumstances of the other offense to raise a reasonable inference the defendant committed both crimes."

Here, a hearing was held prior to trial to determine whether or not evidence of the Colorado murder would be admitted in this trial, pursuant to K.S.A. 60-455. The transcript of that hearing is not included in the record on appeal and thus we have no way of knowing what arguments were presented by the parties. Nor do we know what rationale the court used in determining that the evidence was admissible. Considering the record of the trial, however, we conclude that the State did demonstrate sufficient similarity between the two murders to warrant admission of the Colorado murder and evidence for the limited purpose of proving identity. The court did not err in admitting exhibit No. 45.

Defendant next contends that the trial court erred in admitting certain photographs, exhibits Nos. 10 and 22, into evidence. Exhibit No. 10 is a black and white photograph of the head and shoulders of the victim. It was identified as accurately portraying the face of the victim as she was found in the basement of the dormitory. Exhibit No. 22 is a color photograph of the chest and abdomen of the victim, showing the major wounds she received. It was referred to during the testimony of the physician who performed the autopsy upon the victim. Both photographs were taken in the basement of the dormitory, before the body was removed. Defendant argues that these exhibits were unduly repetitious, gruesome, and that they added nothing to the State's case. At trial both exhibits were objected to on the basis that they were gruesome.

The trial court declined admission to certain other exhibits on the basis that they were repetitive, but admitted these two photographs. Our rules relating to the admission of photographs of homicide victims were recently discussed in *State v. Yarrington*, 238 Kan. 141, 144, 708 P.2d 524 (1985). We said:

"[T]he general rule is that photographs that accurately portray what they purport to show are admissible in evidence. *State v. Murdock*, 236 Kan. 146, 152, 689 P.2d 814 (1984). In *State v. Pearson*, 234 Kan. 906, the court stated:

" 'The law is well settled in this state that in a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to the testimony of a pathologist as to the cause of death, even though they may appear gruesome.' p. 918."

The exhibits, and particularly exhibit No. 22, are unpleasant and gruesome, yet they portray the victim as she was discovered

at the scene of the crime and clearly show the wounds inflicted. Both were referred to by witnesses during their testimony. They were not unduly repetitious and were properly admitted in evidence.

We now turn to defendant's objection to the instruction given by the trial court which limited the jury's consideration of the Colorado conviction. The following instruction, following PIK Crim. 2d 52.06, was given:

"Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's identity."

Defendant asked the court to add the following to the instruction:

"If you do not find the evidence persuasive of Defendant's identity, you should reject it and consider it for no other purpose."

The trial court denied the request. We held in *State v. Williams*, 234 Kan. at 237, that the instruction, as given by the trial court here, adequately and accurately states the relevant law. See also *State v. Sanford*, 237 Kan. 312, 316, 699 P.2d 506 (1985). The sentence proposed by defendant would not, in our opinion, clarify the instruction and is somewhat redundant. We find no error.

Finally, defendant argues that the evidence was insufficient to support the jury's verdict of guilty. He argues that the only evidence connecting him with the crime was the testimony of the four witnesses who stated that they heard the defendant admit that he killed Julie Ladd. Defendant argues that the testimony of these witnesses was inconsistent and should not have been believed.

The applicable rule was concisely stated in *State v. Pink*, 236 Kan. 715, 729, 696 P.2d 358 (1985):

"In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of the charge are sustained. *State v. Pham*, 234 Kan. at 667-68; *State v. Douglas*, 230 Kan. 744, 745-46, 640 P.2d 1259 (1982)."

The evidence here, if believed by the jury, was clearly sufficient to support the guilty verdict.

The judgment is affirmed.