No. 61,511

STATE OF KANSAS, *Appellee*, v. STEPHEN A. MACOMBER, *Appellant*.
(769 P.2d 621)

Opinion filed March 3, 1989.

*Lucille Marino,* assistant appellate defender, argued the cause and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*Debra L. Barnett,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with her on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal action. Stephen Macomber appeals his jury convictions of four counts of aggravated robbery, K.S.A. 21-3427, and one count of aggravated battery, K.S.A. 21-3414. Macomber's previous convictions on these same counts were reversed and remanded by this court in *State v. Macomber,* 241 Kan. 154, 734 P.2d 1148 (1987) (*Macomber I*).

Macomber's convictions stem from four robberies within two months of fast food restaurants in Wichita. The restaurant employees were unable to identify the man who robbed them as he wore a plastic bag over his head. Macomber was arrested and convicted due to admissions he made to friends. Additional facts will be discussed as they relate to the issues in the case.

The first issue is whether the trial court abused its discretion by the manner in which it allowed Macomber to impeach the credibility of a witness against him. This witness was Bryan Fairchild, in whose home Macomber lived for about two weeks before his arrest. The police searched the home with Macomber's permission, but failed to find a gun used in one of the robberies. The next day, Fairchild told the police he had just found the gun, and led them to the gun hidden in his house. He testified Macomber had told him he committed the robberies and assault.

In *Macomber I,* we reported the facts of Macomber's first trial relevant to the instant case:

"During cross-examination of Fairchild, appellant was permitted to ask the witness whether he had ever lied on the stand before. Fairchild replied that he had not. A proffer of evidence was made, setting forth evidence appellant wished to use to impeach Mr. Fairchild. Specifically, at the preliminary examination in this case, Fairchild stated *he was not under the influence of drugs and never used drugs;* yet, two witnesses would testify Fairchild· had in fact smoked marijuana on the way to the preliminary hearing and was involved in various drug transactions at the time of the hearing.

"The trial court ruled that although a witness's credibility may be attacked by evidence regarding the character traits of honesty and veracity, it can only be attacked by opinion or evidence testimony of reputation and not by specific instances of a witness's conduct. K.S.A. 60-422(c) and (d). The court further held that evidence of drug use or drug offenses does not involve dishonesty or false statement and such evidence is inadmissible for impeaching the credibility of a witness.

"K.S.A. 60-420 provides:

" 'Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility.'

"K.S.A. 60-422(c) and (d) provide:

" 'As affecting the credibility of a witness . . . (c) evidence of traits of his or her character other than honesty or veracity or their opposites, shall be inadmissible; (d) *evidence of specific instances of his or her conduct relevant only as tending to prove a trait of his or her character, shall be inadmissible.*' " 241 Kan. at 158.

The cited statutes have not been amended.

We held Macomber was not attempting to introduce a specific instance of conduct "relevant only as tending to prove" Fairchild had the trait of drug use, or even of general dishonesty. Instead, Macomber was attempting to prove that Fairchild had lied in his testimony regarding *this case.* We held that, "[s]ince Fairchild's testimony regarding the appellant's admission of criminal activity was essential to the State's case, the trial court should have admitted the evidence showing the witness had testified falsely." 241 Kan. at 159.

The first Kansas case on this evidentiary issue is *Dewey v. Funk,* 211 Kan. 54, 505 P.2d 722 (1973). *Dewey* was a paternity case in which the mother testified on direct examination that she was a virgin prior to intercourse with the defendant. We found the testimony to be irrelevant and inadmissible because the trial

court had previously restricted testimony concerning acts of sexual intercourse to those occurring during the period when the conception could have occurred. The question was what remedy should be allowed the defendant. We held, because it was the plaintiff's counsel who elicited irrelevant testimony prejudicial to the defendant, the defendant should have been allowed to impeach that testimony through testimony that the mother had engaged in intercourse with three other men prior to intercourse with the defendant, even though these incidents could not have resulted in the conception of the child. We cautioned such testimony would be admissible only where the direct testimony of one party made it necessary to remove unfair prejudice against the other in the minds of the jury. "If the testimony of Nancy Dewey as to her virginity had been elicited on cross-examination, defendant would not have been able to contradict such testimony since it involved a collateral matter." 211 Kan. at 57. We reversed and remanded for a new trial. Presumably, Dewey's claim of virginity at her first trial could not have been brought out at her second for impeachment purposes.

The next case is *State v. Nixon*, 223 Kan. 788, 576 P.2d 691 (1978). *Nixon* was a rape trial to the court in which the complaining witness, after her use of narcotics had been established on direct, testified on cross-examination that she had never sold narcotics. Because the case turned on whether the court believed the defendant or the complaining witness, we held the defendant should have been allowed to introduce testimony showing the complaining witness *had* sold narcotics. The evidence would be allowed, but not because it was relevant whether the witness sold narcotics. Drug offenses per se do not establish dishonesty or false statement on the part of a witness. *State v. Belote*, 213 Kan. 291, 516 P.2d 159 (1973). Rather, the evidence would be allowed to establish the complaining witness' truthfulness during the trial. We thus departed from *Dewey* by holding that, even if it were the defendant who elicited the testimony sought to be challenged, that testimony could be impeached to show credibility if the plaintiff failed to object to the collateral questions at the outset.

*Nixon* was affirmed in *State v. Davis*, 237 Kan. 155, 697 P.2d 1321 (1985), in which an accomplice contradicted the defendant's testimony by claiming he was an innocent bystander while

the defendant committed a robbery. On recross-examination, defense counsel elicited testimony from the witness that he had never committed a robbery. Because the credibility of the witness was a major factor in whether the jury found the defendant to be guilty, we held the trial court should have allowed the defense to present testimony from the defendant's mother that the witness made his living by robbery.

Finally, in *Macomber I*, we held for the purpose of testing a witness' credibility a defendant could introduce evidence of matters not involving honesty and veracity for the limited purpose of showing a witness falsely testified at the preliminary hearing.

In the case at bar, the trial court allowed defense counsel to ask part of the question asked of Fairchild at the preliminary hearing: whether he was under the influence of marijuana when he testified at the preliminary hearing. Upon his negative reply, Macomber was allowed to introduce testimony that Fairchild had smoked marijuana during a noon recess at the preliminary hearing. The court further presented the jury with a well-written and reasoned jury instruction as follows:

"Evidence has been admitted in this trial concerning the use of drugs. Generally, the use of drugs is not a test of credibility; however, giving false testimony under oath is relevant in determining credibility.

"You may consider whether or not the witness on a prior occasion testified falsely about not being under the influence of drugs as affecting the witness's credibility."

The court's actions were proper, as in *Macomber I* where we held such evidence admissible.

The errors claimed are the court's delay, the judge's commentary in front of the jury, and an oral instruction to the jury, all of which Macomber argues caused the jury to believe the impeachment testimony was improper and unimportant.

The problems began when Macomber first attempted to lay a foundation for impeachment of the testimony of Fairchild. Macomber took his cue from *Macomber I's* recounting of what had been "permitted" by the trial court in the first trial, and asked, "Mr. Fairchild, have you ever lied under oath before?" *Macomber*, 241 Kan. at 158. Fairchild replied he had not, the State objected, and the court asked, "What kind of a question is that?" Defense counsel was thereupon allowed to approach the bench for the first of many discussions on this issue outside the pres-

ence of the jury. Because our primary concern is with those comments heard by the jury, only an abbreviated statement of these discussions will be recited.

First, the trial court ruled the question to the witness improper and correctly stated we did not hold it to be proper in *Macomber I.* Then, it indicated it believed Fairchild's testimony about his drug use should never have been admitted at the preliminary hearing, which may be correct but was not an issue addressed in *Macomber I.* The trial court's statements as a whole indicate it believed that, although we held impeachment of a statement made at preliminary hearing should have been allowed at the first trial, the second trial was so remote in time that the ruling should no longer apply. This is an incorrect construction of *Macomber I.* We held in *Macomber I* that Macomber had the right to show Fairchild lied in his testimony at the preliminary hearing against Macomber. Reversal and remand on that issue would serve no purpose if Macomber were denied that right in a second trial.

Another misunderstanding by the court which caused much delay was its belief that Fairchild testified at preliminary examination only that he was not under the influence of drugs. *Macomber I* clearly states Fairchild testified "he was not under the influence of drugs *and never used drugs.*" 241 Kan. at 158. That this was Fairchild's testimony was pointed out to the court in chambers at one point by Macomber himself. The court persisted in understanding the answer to have been limited to influence because, it stated, while a question as to whether Fairchild was under the influence at the time of his testimony might have been conceivably proper, a question as to whether he used drugs could never have been. *Macomber I* does not state what the question was that elicited Fairchild's response, and the trial court refused defense counsel's offer to obtain a transcript of the preliminary hearing to resolve the question.

Thus, defense counsel was only allowed to ask Fairchild if he had been under the influence of drugs at the preliminary hearing. Further, Macomber's rebuttal witness, who testified she smoked marijuana with Fairchild during the noon recess at the preliminary hearing, was subjected to a long series of questions by the defense attorney in an attempt to satisfy the court's demand that a foundation be laid that the witness qualified as

one who could ascertain when a person was "under the influence." This attempt covered seventeen transcript pages, in which the court made many comments in front of the jury.

Eventually, however, Macomber was able to impeach that part of Fairchild's testimony in which he stated he was not under the influence at the time of the preliminary hearing. Defense counsel was then inspired to try the same tactic when, on direct examination, Fairchild denied having a cocaine kit in his room as alleged by Macomber. Defense counsel asked Fairchild on cross-examination whether he had ever used cocaine, in an apparent attempt to lay foundation for later impeachment by a witness on this matter. After objection and a discussion in front of the jury, the court instructed the jury as follows:

"I'm going to just state something on the record. There's no reason to have secrets from this jury. You can cross-examine people about their convictions of offenses involving dishonesty and false statement as affecting their credibility. It's been held on numerous occasions by our Court that whether someone may have used some drug is not admissible to test their credibility. There's been an exception in this case having to do with whether or not upon the occasion of a preliminary hearing this witness stated that he was not under the influence of marijuana. You have heard some testimony by a young woman who says that she smoked two marijuana cigarettes with him upon the occasion after a noon recess of a preliminary hearing. The ground of admissibility of that evidence was agreed to by counsel for the State and the defense in a conference out in the hall. The admissibility of any of that is limited solely to whether or not false testimony was given at the preliminary hearing as to whether or not, upon the occasion of the preliminary hearing, the individual now on the stand was testifying falsely that he had not ingested marijuana, as I understood it.

"Now, it's rather esoteric, perhaps; but the consideration and the sole consideration is whether or not at the preliminary hearing this gentleman falsely stated he was not under the influence of marijuana, as I understand what it's been limited to up to this moment. Based on that—Is what I'm saying obscure to you? The only question is whether this man falsely testified that he was not under the influence of drugs whenever that preliminary hearing was held, and that's the only basis upon which credibility can be tested."

At a later point, after further discussion, the trial court permitted the defense to ask the question again, stating it understood defense counsel wanted "to ask if [Fairchild] has used cocaine upon occasions which would cast light on whether or not he would be having such a kit?" Fairchild denied ever having used cocaine. This testimony was never impeached.

The issue is whether Macomber was so prejudiced by the trial court's commentary and delay as to negate the court's eventual

acquiescence to defendant's requests and proper written instructions to the jury. While the court's actions caused the jury some confusion, there is no evidence it caused the jury to doubt or dismiss the impeachment testimony. Any error was cured through the admitted testimony and written instruction. The court's actions were not so arbitrary, fanciful, or unreasonable as to constitute an abuse of discretion. Any error in its actions did not prejudicially affect Macomber's substantial rights, and the trial was substantially fair. Reversal is thus not required. *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986).

The second issue is whether the imposition of a more severe sentence after Macomber's conviction following the successful appeal of his first conviction violated Macomber's due process rights under the 14th Amendment.

Following Macomber's convictions in the first trial, the presiding judge sentenced Macomber to a controlling term of 32 years to life imprisonment. Following the present identical convictions, a different presiding judge sentenced Macomber to a controlling term of 38 to 100 years' imprisonment, which, as the minimum term is the more meaningful portion of the sentence, must be deemed a more severe sentence than the first.

Due process requires that vindictiveness against a defendant for having successfully attacked his first conviction must not color the sentence he receives after the new trial, and that the defendant must not be made to fear appealing because of such retaliatory motive on the part of the sentencing judge. *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). A sentencing judge may thus not impose a heavier sentence after a new trial except for the reason of objective information concerning the defendant's conduct which occurred after the time of the original sentencing. *Wasman v. United States*, 468 U.S. 559, 82 L. Ed. 2d 424, 104 S. Ct. 3217 (1984). Such proper reason for a heavier sentence must be articulated by the judge and made part of the record.

In the instant case, the sentencing court articulated no reason for its sentence which was not known to the first court prior to its sentencing. Reversal is thus required under *Pearce* if the presumption of vindictiveness is found to apply in a case where the defendant is sentenced by a different judge at his second trial. Macomber's second sentence was not pronounced by the judge who imposed the first sentence.

In *Texas v. McCullough,* 475 U.S. 134, 140 n. 3, 89 L. Ed. 2d 104, 106 S. Ct. 976 (1986), the Court noted "*Pearce* itself apparently involved different judges presiding over the two trials," but held this fact had not been determinative of the court's opinion. Instead, the Court had subsequently to *Pearce* held the presumption of vindictiveness arises from the judge's "personal stake in the prior conviction." *Chaffin v. Stynchcombe,* 412 U.S. 17, 27, 36 L. Ed. 2d 714, 93 S. Ct. 1977 (1973). The Court held the presumption did not apply in *McCullough* in part because the judge herself granted a new trial and sentenced the defendant after his second conviction at the defendant's request, whereas after his first conviction he had chosen to be sentenced by the jury.

*McCullough* cited *Colten v. Kentucky,* 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972), where the Court held no presumption of vindictiveness arose where the fine at the defendant's first sentencing had been imposed in the lower court of a two-tier state system for adjudicating less serious criminal cases. Under this system, the defendant had the right to apply for a trial de novo to the higher court, without claiming error below. In such circumstances, where a completely separate court, as well as judge, heard the case de novo on no claim of error, the court held the presumption of vindictiveness did not apply when a higher fine was imposed after conviction in the higher court.

We followed *Colten* in *State v. Parker,* 213 Kan. 229, 516 P.2d 153 (1973), holding the harsher sentencing by a district court following a de novo trial carried no presumption of vindictiveness where the defendant had exercised his right, under the two-tier system then in place for less serious criminal cases, to appeal from his conviction in city court without claiming error.

Macomber argues his case is distinguishable from the above cases because a new trial was not granted him by the district court, and the second district court judge had an "institutional interest" in punishing his challenge to the authority of the district courts.

The precise issue of whether the presumption of vindictiveness applies where two different district court judges sentence a defendant has not been addressed by this court. Prior to *Pearce,* district courts in Kansas were allowed to impose higher sen-

tences for convictions following successful appeals without giving an explanation for doing so. See *Young v. State*, 207 Kan. 166, 483 P.2d 1020 (1971). We have thus far limited second sentencings only as required by the line of United States Supreme Court cases following *Pearce*. We hold no presumption of vindictiveness arises where the original judge does not pronounce sentence after the second conviction. There is thus no error. "[W]here the presumption does not apply, the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. at 569. Macomber has made no showing of actual vindictiveness.

The third issue is whether the trial court erred in refusing to give PIK Crim. 2d 68.07, substituting instead its own instruction on multiple counts. PIK Crim. 2d 68.07 states:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, *uninfluenced by your decision as to any other charge*. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the presiding juror." (Emphasis supplied.)

The court's instruction read:

"Each crime charged against the defendant is a separate offense. He may be convicted or acquitted on all or any of the charges. You must decide as to each charge whether or not the state has met its burden to establish by evidence as to that charge proof beyond a reasonable doubt of defendant's guilt. You cannot convict the defendant of any offense merely because he is charged with several offenses. The evidence must, as to each separate offense, be sufficient."

A trial court does not have the time to give the thought and do the research which has been put into the preparation of the Pattern Criminal Jury Instructions by the Advisory Committee on Criminal Jury Instructions to the Kansas Judicial Council. Therefore, where "pattern jury instructions are appropriate, a trial court should use them unless there is some compelling and articulable reason not to do so." *State v. Wilson*, 240 Kan. 606, 610, 731 P.2d 306 (1987).

The court articulated its reason for refusing to give the pattern instruction as follows:

"[S]ome of the evidence in this case . . . involves common pattern and also involves a common method, and also involves some of the evidence as to possession of the weapon or weapons. That is common to all cases. And when you say that they're not to consider any of the evidence on one count with respect to

the evidence on another count, you're asking to disregard admissible evidence; but your point is well taken that each crime is a separate and distinct offense; and you must decide whether or not it's been proven beyond a reasonable doubt that each charge is established. And it's also true he may be convicted or acquitted of any or all of the offenses charged. The vice I find in [PIK Crim. 2d 68.07] is the problem of suggesting to the jury that they can't take into account some of the evidence bearing on several of the charges, and some of the evidence does bear on several of the charges."

Macomber contends the court's instruction merely informs the jury that to be charged with a crime is not sufficient for conviction. He argues the instruction omitted the essential point to the jury that, if it decided he was guilty on one charge, it must not let that decision *influence* its decision on any other charge. Macomber argues the court's instruction is especially prejudicial in this case because he was charged with several counts of similar activity—the armed robberies of similar restaurants by similar methods. The jury thus would be more inclined to make one decision as to his guilt or innocence.

The trial court should have given the PIK instruction since it fit the facts in this case. However, the giving of the court's instruction is not grounds for reversal as it did not prejudicially affect Macomber's substantial rights. The court's instruction informed the jury it must not let its decision to convict on one count influence its decision-making on another count.

Further, separate verdict forms with respect to each count were given the jury. In *State v. Cameron & Bentley,* 216 Kan. 644, 651, 533 P.2d 1255 (1975), we held this a factor in deciding a jury would not "have been misled into believing that a finding of guilty on one count dictated a like finding in the other," where a defendant objected to combined instructions concerning multiple counts. We thus held there was no reversible error, although finding, as in this case, that the better practice would have been to give PIK Crim. 2d 68.07. 216 Kan. at 651.

The final issue is whether the trial court abused its discretion in refusing to question a juror regarding an alleged conversation between the juror and a State witness.

The witness was Charles Poe, one of Macomber's friends whose testimony helped convict him. Poe testified he had loaned Macomber the gun which he later learned Macomber had used to rob some of the restaurants. He led the police to the gun after receiving a grant of immunity from prosecution.

A courtroom observer and acquaintance of Macomber, William Talbott, informed Macomber he had seen Poe talking to a juror as they left an elevator together. Macomber requested a mistrial and, after the verdict, a motion for a new trial. Both motions were denied. At trial, the court heard testimony on the issue outside the presence of the jury. Talbott testified he could not hear what Poe and the juror were saying, and that the two separated after exiting the elevator. Poe testified if he said anything to the juror, it was simply a comment such as "go ahead" to let the juror exit ahead of him. He also testified a highway patrolman was in the elevator at the time.

The court decided no impropriety had been suggested and held there was no reason to believe the juror had not abided by his oath and instructions. He found, over Macomber's objection, that it would be improper to examine the juror "about a non-event." Instead, he told defense counsel, "I'm sure we might find out who [the patrolman] is, if you wish to do that."

Macomber presented no further information to the court concerning the patrolman during the trial, and presented testimony from neither the patrolman nor the juror at the hearing on the motion for a new trial.

Communication between a juror and a witness is not a ground for reversal unless the communication is shown to have substantially prejudiced the defendant's rights. The defendant bears the burden of proof. *State v. Fenton,* 228 Kan. 658, 664, 620 P.2d 813 (1980). The granting of a mistrial or new trial because of such conduct is within the sound discretion of the trial court, which is best able to judge whether the defendant was prejudiced by the conduct. *State v. Coburn,* 220 Kan. 743, 746-47, 556 P.2d 376 (1976). The substance of the communication is important and more likely to be prejudicial to the defendant if it relates to the case. *State v. Jakeway,* 221 Kan. 142, 148, 558 P.2d 113 (1976).

Macomber argues the court abused its discretion in failing to question the juror. It is the usual practice to question the juror involved in complaints alleging misconduct. See *State v. Ruebke,* 240 Kan. 493, 731 P.2d 842, *cert. denied* 483 U.S. 1024 (1987); *State v. Weigel,* 228 Kan. 194, 612 P.2d 636 (1980); *State v. Jakeway,* 221 Kan. 142; *State v. Scruggs,* 206 Kan. 423, 479 P.2d 886 (1971); *State v. Kearney,* 130 Kan. 474, 287 Pac. 261 (1930). In *Verren v. City of Pittsburg,* 227 Kan. 259, 607 P.2d 36

(1980), a civil case, we held the trial court erred in refusing to question the jurors on alleged misconduct on their part which would have been prejudicial to the defendant. See *Johnson v. Haupt,* 5 Kan. App. 2d 682, 623 P.2d 537 (1981).

However, the determination of a witness' credibility in such circumstances is within the trial court's discretion. The court believed Poe's testimony and, as an experienced observer of the circumstances surrounding the case, did not believe impropriety occurred. Macomber had the opportunity to obtain the testimony of the juror in support of his motion for a new trial. This he failed to do. We conclude Macomber failed to sustain the burden of proving juror misconduct.

The judgment of the trial court is affirmed.

MILLER, C.J., concurring and dissenting: I concur with the majority's affirming the convictions here, but I respectfully disagree with the majority's approval of the imposition of a more severe sentence, following Macomber's second trial, under the facts disclosed by this record.

The issue of the constitutionality of imposing a more severe sentence, following retrial, was squarely before the United States Supreme Court in *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Pertinent parts of the opinion of the Court read:

"[N]either the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded . . . from imposing a new sentence, whether greater or less than the original sentence, *in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'* Williams v. New York, 337 U.S. 241, 245[, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949)]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources. The freedom of a sentencing judge to consider the defendant's conduct *subsequent* to the first conviction in imposing a new sentence is no more than consonant with the principle, fully approved in *Williams v. New York,* [337 U.S. 241,] that a State may adopt the 'prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime.' [*Williams v. New York,* 337 U.S.] at 247." (Emphasis supplied.) 395 U.S. at 723.

The Court concluded by saying:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence

he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. *Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.*" (Emphasis supplied.) 395 U.S. at 725-26.

In the case at hand, as I perceive the record, the sentencing judge indicated that he would have imposed the increased sentence, had he been the sentencing judge at the first trial. He considered all of the facts and factors which could have been considered at the time the defendant was first sentenced. There was, however, no *objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.* The increased sentence was not based upon events or conduct subsequent to the first trial.

To require the defendant to prove that the second judge, in imposing a harsher sentence, was vindictive is to impose an impossible burden upon him. He cannot demonstrate to an appellate court what was in the mind of the second judge at the time sentence was imposed. As the Supreme Court noted in a footnote to the *Pearce* opinion, "The existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case. But data have been collected to show that increased sentences on reconviction are far from rare." 395 U.S. at 725 n. 20.

There is, of course, no evidence and I do not suggest that Judge Sanborn was vindictive or that he exercised other than good faith and judicial discretion in imposing sentence. At the sentencing hearing, he stated:

"Mr. Jennings [an assistant district attorney] has said that whatever Judge Deer [who imposed the original sentence] did, if what I do doesn't track with that, I have to make an excuse. I don't, and I won't, because I am making up my own mind."

Later, after imposing sentence, he said, "I have made the sentence that I think is appropriate for the conduct."

I find nothing in the record to indicate that the increased sentence was imposed because of conduct on the part of the defendant occurring after the time of the original sentencing proceeding. As I read *Pearce*, a harsher sentence could not be imposed following retrial, absent a showing in the record of the reasons for imposing such sentence.

I respectfully suggest that the sentence should be vacated and the case remanded for resentencing.