NOT DESIGNATED FOR PUBLICATION

No. 111,426

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CARLOS MORAL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Grant District Court; CLINT B. PETERSON, judge. Opinion filed February 5, 2016. Affirmed in part and dismissed in part.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Amanda G. Voth*, assistant solicitor general, of Office of Kansas Attorney General, for appellee.

Before ARNOLD-BURGER, P.J, GREEN and STANDRIDGE, JJ.

*Per Curiam*:  Carlos Moral appeals his convictions for one count of making false information, a severity level 8 nonperson felony, and two counts of giving a worthless check, one of which was a class A misdemeanor and one of which was a severity level 9 felony. Although these convictions were the result of Moral's no-contest pleas, Moral challenges the district court's finding that he was competent to stand trial. He asserts on appeal that the district court erred by admitting a written report from a witness for the State at his competency hearing and by finding that Moral was competent to stand trial. Moral also argues that the district court erred by sentencing him to 1 year in jail.

1

In July 2009, the State charged Moral with 3 counts of theft by deception, 3 counts of making a false information, and 23 counts of giving a worthless check. The case had not yet gone to trial in January 2012 when Moral suffered a stroke that required him to be hospitalized. In November 2012, the district court found that Moral was incompetent to stand trial and ordered that he be committed to Larned State Hospital (Larned) for examination, evaluation, care, and treatment to determine whether he would become competent to stand trial in the foreseeable future. Moral was discharged from Larned on April 17, 2013.

A hearing to determine Moral's competency to stand trial was held on June 24, 2013. Steven Walters, a licensed clinical psychotherapist, was the first to testify. He stated that he held a Master's level psychologist license in Kansas. Walters had a private practice in Great Bend and was also employed by the State Security Program at Larned. Part of his job at Larned was to perform competency evaluations. He estimated he had performed about 600 competency evaluations in his career.

Walters testified that he evaluated Moral between February 7, 2013, when Moral was admitted to Larned, and April 15, 2013, the date of his written report. During that time, Walters met with Moral several times, including at the time of Moral's admission, at Moral's initial treatment plan meeting, at meetings for the purposes of his competency evaluation, and on multiple occasions when Moral requested to meet with Walters. Other staff members at Larned met with and observed Moral as well. They provided notes and reports that Walters reviewed.

Walters used a test on Moral called the Evaluation of Competency to Stand Trial–Revised. Moral scored better than average in the areas of rational understanding of the proceedings, factual understanding of the proceedings, and rational ability to consult with

counsel. He was unable to name every charge against him, but he demonstrated knowledge of the large number of charges and the types of charges. Moral also knew the severity of the charges. In addition, Walters testified that Moral made statements indicating he understood the evidence against him. Moral told Walters that Moral did not agree with the State's evidence or how it was acquired.

Walters recalled Moral coming to his office with a concern that the State was going to try to civilly commit him. Moral felt that such a commitment would be wrong and unlawful. Walters felt Moral had grasped the law surrounding the civil commitment process. Walters also thought Moral was correct in his interpretation of the law.

While at Larned, Moral completed a test meant to detect whether Moral was attempting to exaggerate or feign memory loss, which is often referred to as malingering. Walters did not personally administer this test. Based on the results of the test, Walters initially believed Moral was malingering. But in order to diagnose a patient as malingering, there must be a secondary gain present, such as a desire to escape criminal prosecution. Because Moral scored well on the competency test, Walters determined there was insufficient evidence of a secondary gain, like avoiding criminal prosecution. Walters ultimately did not diagnose Moral as malingering but did diagnose him with dementia, a condition that usually reflects deficits in memory, language, and calculation ability.

Walters also testified about Moral's results from a test called the Wechsler Adult Intelligence Scale–Fourth Edition (WAIS–IV). This test included a working memory index. Moral scored slightly below average on this index, but the score did not concern Walters because Moral's score was so close to the average score.

Walters also testified generally about Moral's behavior as a patient at Larned. Moral was the unit governing president. Other patients would seek Moral's advice for

how to handle grievances against the staff at Larned and Moral would help the other patients articulate their complaints. Walters ultimately testified that, in his opinion, Moral was competent to stand trial.

On cross-examination, Walters acknowledged he had never evaluated a patient with a basal ganglia stroke prior to evaluating Moral. Walters knew that the basal ganglia was a part of the brain but admitted he did not know where in the brain it was located as the brain was not his area of expertise. Walters also acknowledged that Moral's processing speed index on the WAIS–IV was 24 points below average. Walters explained that this meant that Moral had some processing ability but that he would be slower than average.

Moral called Brett Valette as his expert witness. Valette possessed a Ph. D. and was a licensed clinical psychologist in Colorado. Valette specialized in cognitive and memory evaluations and malingering. Valette testified that he performed at least 600 evaluations per year, including cognitive evaluations, memory evaluations, brain injury evaluations, pure psychological evaluations, and work injury evaluations.

Valette explained that before evaluating Moral he had never evaluated a patient who had suffered a basal ganglia stroke because it was an exceedingly rare type of stroke. A basal ganglia stroke affects many different areas of cognitive function, such as routine behavior, eye movement, cognition, emotional function, executive function, attention, visual perception, learning, working memory, decision-making, and emotions. Valette also stated that strokes affect patients differently depending on where they occur in the brain.

Valette evaluated Moral's cognitive and memory functioning with the knowledge that there were some concerns about malingering. On May 2, 2013, Valette, like Walters, had Moral complete the WAIS–IV. Valette testified that during the test Moral suffered

from fatigue, tension, and problems with concentration and focus. Notwithstanding these issues, Valette believed that Moral put sufficient effort into taking the test and that the results were valid.

Moral's scores showed that he was functioning in the average range in all areas. Valette testified, however, that these scores should be viewed in context. Valette stated that prior to the stroke Moral's cognitive functioning and IQ likely would have been superior. Valette therefore concluded that Moral suffered a decrease in his cognitive functioning because of the stroke.

Moral also took a test called the Wechsler Memory Scale–Fourth Edition. In Valette's opinion, Moral showed impairment in all areas of memory function. Valette assessed Moral for malingering and did not detect any malingering. Ultimately, Valette diagnosed Moral with dementia and stated his belief that Moral's condition would most likely not improve in the future. Valette's clinical opinion was that Moral was not competent to participate in his defense. As support for this opinion, Valette noted that Moral could not drive, could not manage a checkbook, had trouble following a recipe, and needed supervision at home. Valette also said Moral had trouble filtering stimuli, which would affect his ability to pay attention and remain focused. Valette felt this would interfere with his ability to assist in his defense.

Finally, Valette criticized Walter's written report. Moral told Valette that the testing at Larned was administered in rooms that were full of distractions and noises, such as people banging on the window or opening the door. Valette stated this could have affected the accuracy of the test results.

In a written decision filed on July 9, 2013, the district court concluded Moral was competent to stand trial. In support of its conclusion, the court noted that Walters had evaluated Moral for over 2 months while Valette evaluated Moral for less than 1 day.

5

Although acknowledging Moral's cognitive functions clearly declined following his stroke, the court found Walters' expert opinion concluding that Moral was competent to stand trial to be more credible and reliable than Valette's opinion.

In October 2013, Moral entered into a plea agreement with the State. He agreed to enter no-contest pleas to one count of making false information, a severity level 8 nonperson felony; one count of giving a worthless check drawn for more than $1,000 but less than $25,000, a severity level 9 nonperson felony; and one count of giving a worthless check drawn for less than $1,000, a class A misdemeanor. In return, the State agreed to dismiss all other charges. The parties also agreed that they each would be free to argue sentencing in all respects. The district court accepted Moral's pleas and found him guilty of all three counts. Moral was sentenced to 15 months' probation for making a false information and 12 months' probation for the felony count of giving a worthless check. He also was sentenced to 12 months in jail for the misdemeanor count of giving a worthless check. The district court ordered all three sentences to run consecutively.

ANALYSIS

*Jurisdiction*

Although Moral's convictions were the result of no contest pleas, the first issue presented by Moral on appeal is whether the district court abused its discretion in finding he was competent to stand trial. Before reaching the merits of Moral's challenge to the district court's discretionary decision, we first must determine whether we have jurisdiction to do so. Although jurisdiction was not raised by either of the parties in the briefs, an appellate court has a duty to question jurisdiction on its own initiative. *Ryser v. Kansas Bd. of Healing Arts*, 295 Kan. 452, 456, 284 P.3d 337 (2012). To that end, this court issued an order on January 4, 2016, directing the parties to be prepared to address jurisdiction at oral argument.

6

The right to appeal is entirely statutory, and the limits of appellate jurisdiction are defined by the legislature. Whether jurisdiction exists is a question of law subject to unlimited review by this court. *State v. Berreth*, 294 Kan. 98, 110, 273 P.3d 752 (2012). Relevant here, K.S.A. 2015 Supp. 22-3602(a) states in part: "No appeal shall be taken by the defendant from a judgment of conviction before a district judge upon a plea of guilty or nolo contendere, except that jurisdictional or other grounds going to the legality of the proceedings may be raised by the defendant as provided in K.S.A. 60-1507, and amendments thereto." Based on this language, our Supreme Court has ruled that "[a] guilty or no contest plea surrenders a criminal defendant's right to appeal his or her *conviction* but not his or her *sentence*." *State v. Key*, 298 Kan. 315, 321, 312 P.3d 355 (2013). The only exception to this rule applies when a defendant appeals from an unsuccessful motion to withdraw his or her plea in district court. 298 Kan. at 321. In other words, a guilty or no contest plea without a subsequent motion to withdraw that plea deprives this court of jurisdiction to hear challenges to a defendant's conviction. *State v. Hall*, 292 Kan. 862, 867, 257 P.3d 263 (2011).

Here, Moral appeals from all of his convictions and one of his sentences. The challenge to his convictions is grounded solely in the district court's finding that he was competent to stand trial. At oral argument, Moral's attorney acknowledged that K.S.A. 2015 Supp. 22-3602(a) imposes the jurisdictional limitations outlined above and that Moral entered his pleas of no contest *after* the district court deemed him competent to stand trial. Counsel for Moral argued, however, that an allegedly incompetent defendant should not be held to have waived any rights by entering pleas of guilty or no contest. Although this argument may have some appeal on its face, it overlooks two facts.

First, and to the extent Moral is arguing that the district court's decision finding him competent to stand trial implicates the knowing and voluntary nature of his pleas, the district court's finding of competence is an issue that could have been asserted at his plea hearing, at his sentencing hearing, or in a motion to withdraw plea filed with the district

court either before or after he was sentenced. But Moral did not file a motion to withdraw his pleas, nor did he attempt to assert his incompetence at his plea hearing or at sentencing. Notably, Moral was represented by counsel throughout the proceedings below. There is a strong presumption that his counsel's performance was within the wide range of reasonable professional assistance. See *State v. Coones*, 301 Kan. 64, 70, 339 P.3d 375 (2014). Moreover, Moral's attorney on appeal did not argue in the brief or at oral argument that Moral's pleas were unknowing or involuntary, instead only arguing that the district court erred in finding Moral competent to stand trial. If the issue is whether Moral received the effective assistance of counsel when deciding to enter his no contest pleas, then the matter is better addressed in a proceeding for postconviction relief.

Second, we find significant the fact that the district court found—after a full evidentiary hearing—that Moral was competent to stand trial. On appeal, this court does not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015). While a competency determination does not conclusively establish that a plea was knowingly and voluntarily made, both our Supreme Court and the United States Supreme Court have held that a competency determination after a full evidentiary hearing tends to contradict a defendant's contention that he or she did not understand the plea proceedings. *State v. Shopteese*, 283 Kan. 331, 341, 153 P.3d 1208 (2007); see also *Godinez v. Moran*, 509 U.S. 389, 395-402, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (distinguishing between competence to stand trial and a knowing and voluntary waiver of constitutional rights).

Where, as here, Moral was represented by counsel and the district court, after a full evidentiary hearing, found Moral competent to stand trial, we must comply with the legislative mandate set forth in K.S.A. 2015 Supp. 22-3602(a), which precludes an appeal by a defendant from a conviction that resulted from that defendant's plea of guilty or no contest to the criminal charges supporting the conviction. Because Moral made no attempt to withdraw his pleas, we have no jurisdiction to hear the two issues Moral raises

8

relating to his competency hearing. Moral surrendered the right to appeal the competency finding and subsequent convictions when he chose to enter pleas of no contest to the charges against him.

*Sentencing*

In his final issue on appeal, Moral argues that his sentence for his misdemeanor conviction for giving a worthless check was erroneous for two reasons. First, he argues that the district court relied on factual circumstances unrelated to his crime of conviction. Second, he argues that the district court acted vindictively when it sentenced him.

*Factual basis*

Because Moral's conviction for giving a worthless check drawn for less than $1,000 was a misdemeanor, the sentence for that crime was not imposed under the Kansas Sentencing Guidelines Act (KSGA) and the pre-KSGA standard for reviewing sentences applies. Under that standard, "[a] sentence imposed within the statutory guidelines will not be disturbed on appeal if it is within the trial court's discretion and not a result of partiality, prejudice, oppression, or corrupt motive." *State v. McCloud*, 257 Kan. 1, 9, 891 P.2d 324, *cert. denied* 516 U.S. 837 (1995). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Woods*, 301 Kan. 852, 861, 348 P.3d 583 (2015).

Moral argues that the district court improperly considered the full amount of the worthless check alleged to have been given by Moral. To address this argument, we must provide some additional background facts. Moral was charged in an amended complaint with a misdemeanor under K.S.A. 21-3707(e)(3), which states: "Giving a worthless check is a class A nonperson misdemeanor if the check, draft or order is drawn for less

9

than $ 1,000." At the plea hearing, however, the State asserted that the factual basis for this charge involved a check drawn for $67,000. When the district court asked why there was such a discrepancy, the State explained that the misdemeanor charge was negotiated for the benefit of Moral. As part of the plea agreement, the State agreed that the $67,000 check would be sufficient for a misdemeanor count and that it would not proceed with a felony charge. Moral's attorney explicitly agreed with the State's explanation. The district court then found Moral guilty of a misdemeanor pursuant to the plea agreement.

At sentencing, the State asked the district court to sentence Moral to probation on the two felony cases because probation was the presumptive sentence for those charges. But it also asked the district court to sentence Moral to 12 months in the county jail on the misdemeanor charge. Moral asked for probation on all counts. The district court eventually sentenced Moral to probation for the felonies. But after noting that the factual basis for the misdemeanor conviction involved a large, $67,000 check, the district court sentenced Moral to 12 months in jail for the misdemeanor charge.

Moral makes a number of arguments attacking his jail sentence, none of which we find persuasive. First, he argues he should not be held criminally liable for allegations of fraud that fall outside his crime of conviction. In other words, he asserts that it was inappropriate for the district court to consider the actual amount of the check—$67,000— and instead should have simply assumed that the check forming the basis of the conviction was drawn for $1,000 or less. But the district court may consider the facts of the case when determining a defendant's sentence. *McCloud*, 257 Kan. at 8-9. Moral explicitly agreed that the $67,000 check formed the factual basis for his no-contest plea to a misdemeanor. Moral cites no authority supporting his claim that the district court must ignore the factual basis supporting a plea.

Moral also argues that the district court should never have allowed the parties to agree that a $67,000 check could form the factual basis for a misdemeanor conviction for

10

giving a worthless check. This appears to be another challenge to Moral's conviction rather than his sentence. If so, this court has no jurisdiction to hear the issue for the reasons stated above. But even if we construe it to be a challenge to the sentence imposed, we still find it unpersuasive. "[I]f a defendant enters into a beneficial plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled." *McPherson v. State*, 38 Kan. App. 2d 276, 285, 163 P.3d 1257 (2007). As such, a defendant may plead to a nonexistent crime as part of a plea agreement as long as the defendant (1) was initially charged with a valid pleading, (2) received a beneficial plea agreement, and (3) voluntarily and knowingly entered into the plea agreement. 38 Kan. App. 2d at 281. Although a crime does exist that comports with the factual basis offered by the State in this case, we conclude the reasoning used by the court in *McPherson* is applicable here. Moral was initially charged with giving a worthless check drawn for $25,000 or more under K.S.A. 21-3707(e)(1)(A). The $67,000 check would have supported this charge. Therefore, Moral's initial complaint was valid. And Moral received a clear benefit by entering into his plea bargain. Not only did the State dismiss 26 counts against Moral, but it also agreed to seek only a misdemeanor conviction for giving a worthless $67,000 check. Under normal circumstances, a worthless check over $1,000 would have resulted in a felony conviction. See K.S.A. 21-3707(e)(1)-(3). Finally, we note that the district court engaged in a colloquy with Moral at the plea hearing and specifically found that the plea was voluntary and made with a full understanding of the consequences.

For the reasons stated above, we find the district court properly accepted a factual basis for Moral's misdemeanor plea, even though it was inconsistent with the crime charged. Because Moral accepted the benefit of his plea agreement knowingly and voluntarily, he cannot attack the factual basis for his conviction and sentence on appeal.

11

*Vindictiveness*

Moral argues that the district court's sentence was vindictive and therefore violated his due process rights under the Fourteenth Amendment to the United States Constitution. He concedes, however, that he did not raise this issue below. Generally, issues not raised before the district court cannot be raised on appeal. There are three exceptions to this general rule: (1) The issue involves only a question of law arising on proved or admitted facts and is determinative of the case, (2) consideration of the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights, and (3) the district court is right for the wrong reason. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Moral asserts that the second exception applies here.

Even if we were to invoke the exception to the general rule that this court will not hear issues for the first time on appeal, we would find that Moral's sentence was not vindictive. Moral relies on *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), and *State v. Rinck*, 260 Kan. 634, 638-40, 923 P.2d 67 (1996). In *Pearce*, the United States Supreme Court found that the Due Process Clause of the Fourteenth Amendment requires that vindictiveness against a defendant for successfully attacking an initial conviction must play no part in his or her sentencing after a new trial. 395 U.S. at 725. Therefore, "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his [or her] doing so must affirmatively appear" and be based on objective information concerning the defendant's conduct after his or her original sentencing hearing. 395 U.S. at 726.

In *Rinck*, the defendant prevailed in his initial direct appeal, and the Kansas Supreme Court remanded the case for resentencing on two charges. Upon remand, the district court doubled Rinck's controlling prison sentence. On appeal for the second time,

the Kansas Supreme Court again vacated the sentences because the State failed to show the increased sentences were not motived by vindictiveness. 260 Kan. at 645.

Both *Pearce* and *Rinck* are wholly distinguishable from this case. Both of these cases concern rules that only apply where a conviction or sentence has been successfully attacked collaterally or on direct appeal. This is Moral's first appeal related to this case. For this reason alone, the vindictiveness rule drawn from *Pearce* and *Rinck* is inapplicable here.

In an attempt to draw parallels between his case and *Pearce* or *Rinck*, Moral complains that his 12-month misdemeanor jail sentence is longer than the underlying sentence for one of his felony charges and that both felony charges merely resulted in probation. But K.S.A. 21-4502(1)(a) authorizes a jail sentence of up to 1 year for a class A misdemeanor. Thus, the district court merely imposed the maximum statutory sentence, something it had the discretion to do. There is nothing to suggest that the district court acted vindictively or with any improper motive when it sentenced Moral.

Affirmed in part and dismissed in part.