No. 74,537

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER A. RINCK, *Appellant*.

(923 P.2d 67)

Opinion filed August 9, 1996.

*Hazel Haupt*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Jérome A. Gorman*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is the second time this case has been before us. In *State v. Rinck*, 256 Kan. 848, 888 P.2d 845 (1995), after concluding that the defendant's conviction for aggravated battery was multiplicitous with his aggravated robbery conviction, we reversed his aggravated battery conviction, vacated his sentences, and remanded for resentencing on the charges of aggravated robbery and aggravated burglary. This is the defendant's appeal from the new sentences imposed. He contends (1) he was denied due process because his sentences for the same conviction upon remand were more severe than the punishment originally imposed and (2) the court erred in its application of the Habitual Criminal Act, K.S.A. 1992 Supp. 21-4504. We agree, vacate the sentences imposed, and remand again for resentencing in accord with this opinion.

The facts are not in dispute. Briefly, the charges against the defendant arise from an incident in which the defendant and two juvenile accomplices burglarized the residence of an 82-year-old

woman. They stole a TV set and Tupperware containers filled with change from the victim's residence. During the course of the burglary, the defendant beat the victim over the head with a flashlight. The victim suffered a 2-inch gash on the top of her head which required 10 stitches.

The defendant was originally charged with and convicted of aggravated burglary (K.S.A. 1992 Supp. 21-3716), aggravated battery (K.S.A. 21-3414 [Ensley 1988]), and aggravated robbery (K.S.A. 21-3427 [Ensley 1988]). The court sentenced the defendant under the Habitual Criminal Act to 10 to 20 years for aggravated burglary and 15 years to life for aggravated robbery. The court ordered these sentences *to run concurrent* with each other and consecutive to other sentences previously imposed. The controlling sentence of 15 years to life was not affected by the enhancement of the sentence for aggravated burglary. Consequently, the defendant did not challenge the enhancement in his first direct appeal to this court.

Upon resentencing after remand by this court, the trial court considered and used the court's findings in the original sentencing hearing regarding the Habitual Criminal Act. The trial court applied the sentencing factors of K.S.A. 21-4606 and imposed the enhanced sentences of 10 to 20 years for aggravated burglary and 20 years to life for aggravated robbery, *to run consecutively*. In effect, the court doubled the defendant's controlling sentence from the previously imposed sentence of 15 years to life to a controlling sentence of 30 years to life.

### Due Process upon Resentencing

The leading case of *North Carolina v. Pearce,* 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), involved two separate cases where the defendants successfully appealed their original convictions and on retrial received greater sentences than they had received originally. For the defendant Pearce, the State offered "no evidence" to justify the increased sentence and had not attempted to explain or justify the greater penalty. For the defendant Rice, the State advanced no reason for his increased sentence "beyond the naked power to impose it." 395 U.S. at 726. The Court noted that neither the Double Jeopardy Clause nor the Equal Protection

Clause bar imposition of the greater sentences after the reconviction of the defendants. However, *Pearce* noted that the Due Process Clause of the Fourteenth Amendment to the United States Constitution prevented increased sentences actually motivated by vindictive retaliation by the trial court upon resentencing:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." 395 U.S. at 725-26.

In this case, we do not have a retrial, conviction, and resentencing after a prior conviction has been set aside, but our situation is not much different. Here, the defendant appealed, and this court set aside his sentences. The matter was remanded for resentencing and, based upon the same two convictions of aggravated robbery and aggravated burglary (the charge of aggravated battery was dismissed based upon multiplicity), the defendant received a more severe sentence than the sentence originally imposed. The defendant contends that the sentences imposed must be set aside because they violated his due process rights.

In the more recent case of *Wasman v. United States*, 468 U.S. 559, 82 L. Ed. 2d 424, 104 S. Ct. 3217 (1984), the Court discussed *Pearce* and clarified its holding. *Wasman* involved a defendant whose conviction had been set aside. He was retried and convicted of the same offense and resentenced to a greater penalty than had been imposed in the original sentence. When the defendant had first been sentenced, he had a pending charge which had not resulted in a conviction. The trial court, therefore, did not consider the pending charge when imposing the original sentence. How-

ever, in the interim time between his appeal and his appearance for imposition of his second sentence, the pending charge had resulted in a conviction. When imposing the final sentence, the trial court considered this new conviction and imposed a more severe penalty. The trial court noted on the record:

"[W]hen I imposed sentence the first time, the only conviction on [petitioner's] record in this Court's eyes, this Court's consideration, was failure to file income tax returns, nothing else. I did not consider then and I don't in other cases either, pending matters because that would result in a pyramiding of sentences. At this time, he comes before me with two convictions. Last time, he came before me with one conviction." 468 U.S. at 562.

Wasman argued that *Pearce* prevented the trial judge from considering his prior conviction because it involved conduct that occurred prior to the time of his original sentencing proceeding. The defendant relied upon the following language from *Pearce:*

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant *occurring after* the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (Emphasis added.) 395 U.S. at 726.

"A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, *in the light of events subsequent to* the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, mental and moral propensities.' *Williams v. New York*, 337 U.S. 241, 245 [, 93 L. Ed. 1337, 69 S. Ct. 1079]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." (Emphasis added.) 395 U.S. at 723.

*Wasman* noted that *Pearce* is not without its ambiguities. The *Wasman* Court identified its own case as squarely presenting the question of the scope of information that may be relied upon by a sentencing authority to justify an increased sentence after retrial. However, *Wasman* found it unnecessary to resolve apparent ambiguities presented by *Pearce*, holding that "any language in *Pearce* suggesting that an intervening conviction for an offense committed

prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the *Pearce* opinion as a whole." 468 U.S. at 571.

An analysis of *Wasman* is instructive in resolving the question we now face. *Wasman* makes it clear *Pearce* does not in any sense forbid enhanced sentences or charges but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights. In only two instances has the United States Supreme Court applied the "prophylactic rule" of a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence. The first case is *Pearce*, discussed above. In the second case, *Blackledge v. Perry*, 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098 (1974), the defendant was charged with a misdemeanor offense of assault with a deadly weapon. He was convicted and sentenced to a term of 6 months. He appealed and under state law had a right to a trial de novo.

After Blackledge filed his appeal, the prosecutor obtained an indictment for a felony offense of assault with a deadly weapon with intent to kill. He pleaded guilty to the felony offense and was sentenced to 5 to 7 years' imprisonment. The Court held that the indictment for the felony offense was impermissible under the Due Process Clause because "the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." 417 U.S. at 27.

The *Wasman* Court stated:

"Although there was no affirmative evidence tendered that the prosecutor brought the felony charge in bad faith, we agreed that, because the record was devoid of any explanation for the new indictment, relief should be granted. Consistent with *Pearce*, however, we explicitly observed that a different disposition would have been called for had the State advanced a legitimate nonvindictive justification for the greater charge. 417 U.S. at 29, n.7 [, 40 L. Ed. 2d 628, 94 S. Ct. 2098]. This acknowledgment, of course, was no more than a reaffirmation that *Pearce* established a rebuttable presumption of vindictiveness, not an absolute prohibition on enhancement of sentence." 468 U.S. at 566.

In other circumstances, the Court has refused to indulge in a presumption of vindictiveness of the kind imposed in *Pearce* and *Blackledge*. In *Colten v. Kentucky*, 407 U.S. 104, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972), the defendant was convicted of a misdemeanor in the inferior court. Under Kentucky's two-tiered trial system, a defendant has the right to a trial de novo in a court of general jurisdiction. The Court held that the possibility of vindictiveness found to exist in *Pearce* was not inherent in the Kentucky two-tiered system and rejected Colten's contention that upon trial de novo the tribunal was constitutionally prohibited from imposing a greater sentence than that imposed in the original trial. Similarly, in *Chaffin v. Stynchcombe*, 412 U.S. 17, 36 L. Ed. 2d 714, 93 S. Ct. 1977 (1973), the Court rejected the need for the prophylactic *Pearce* presumption because the Court perceived as "de minimis" the possibility that an increased sentence by a jury upon reconviction after a new trial would be motivated by vindictiveness. *Wasman* notes in its consideration of *Chaffin* that not only was the second jury unaware of the prior conviction but in contrast to the judge and the prosecutor in *Pearce* and *Blackledge*, it was unlikely that a jury would consider itself to have a "personal stake" in a prior conviction or a motivation to engage in self-vindication. 468 U.S. at 567.

In *Bordenkircher v. Hayes*, 434 U.S. 357, 54 L. Ed. 2d 604, 98 S. Ct. 663 (1978), the Court held that due process is not implicated when a prosecutor threatens to seek conviction on a greater offense if the defendant does not plead guilty and the prosecutor in fact does so when the defendant proceeds to trial. Moreover, in *United State v. Goodwin*, 457 U.S. 368, 374, 73 L. Ed. 2d 74, 102 S. Ct. 2485 (1982), the Court held that a presumption of vindictiveness is unwarranted where the prosecutor adds a felony charge before trial to a defendant's misdemeanor charge after the defendant demands a jury trial on the misdemeanor charge. *Goodwin* concluded that it was highly unlikely that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest.

In all cases where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness in order to prevail.

However, where the presumption applies in cases similar to *Pearce* and *Blackledge,* the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness.

Recently, this court considered a similar issue in the case of *State v. Macomber,* 244 Kan. 396, 769 P.2d 621, *cert. denied* 493 U.S. 842 (1989). Macomber was originally sentenced to a controlling term of 30 years to life. His appeal succeeded, and we reversed his convictions and remanded for a new trial. He was again convicted of the identical crimes upon retrial, and the court sentenced him to a controlling term of 38 to 100 years, a sentence more severe that his first sentence. We reviewed the pertinent cases of the United States Supreme Court dealing with this issue, including *Pearce, Wasman, Chaffin,* and *Colten,* along with *Texas v. McCullough,* 475 U.S. 134, 89 L. Ed. 2d 104, 106 S. Ct. 976 (1986). We acknowledged that the issue of vindictiveness in the resentencing was of critical importance. We adopted *Pearce,* acknowledging that *Macomber* turned upon the question of whether there was a presumption of vindictiveness in the defendant's resentencing. We resolved the case based upon the fact that the resentencing occurred before a different judge than the judge imposing the first sentence:

"We hold no presumption of vindictiveness arises where the original judge does not pronounce sentence after the second conviction. There is thus no error. '[W]here the presumption does not apply, the defendant must affirmatively prove actual vindictiveness.' *Wasman v. United States,* 468 U.S. at 569. Macomber has made no showing of actual vindictiveness." 244 Kan. at 405.

Based upon the above holding, the parties in this case spend considerable time in their briefs on the question of whether the original judge imposed the sentence in this case upon resentencing. Initially, Judge Sieve was a member of a panel of three judges who considered the appropriate sentence for Rinck. The first sentence was imposed by another member of the three-judge panel. At the time, this was the sentencing system in place in Wyandotte County, but this system is no longer being used.

Judge Sieve is also the judge who imposed the second sentence upon remand. The State claims that the second sentence is not

imposed by the original judge and the defendant must, therefore, prove actual vindictiveness to prevail. The defendant says the second sentence was imposed by the same judge and there is a presumption of vindictiveness which has not been overcome by evidence of record.

Judge Sieve was involved in both sentences imposed upon the defendant in this case. We have no hesitancy in concluding that the sentences were imposed by the same judge. Thus, the presumption of vindictiveness in the resentencing would apply under our holding in *Macomber*. However, we need to reexamine our holding in *Macomber*.

Our focus in *Macomber* on whether the original judge imposes the second sentence upon resentencing is not a critical concern. The presumption of vindictiveness is not dependent upon whether the resentencing upon remand is imposed by the same or a different judge. To the extent that *Macomber* holds otherwise, it must be rejected in favor of the principles set forth in this opinion.

*Wasman* decided that the defendant's prior conviction, even though based upon conduct subsequent to his original sentence, may be considered by the trial court in resentencing. In doing so, *Wasman* states:

"We conclude that any language in *Pearce* suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the Pearce opinion as a whole. *There is no logical support for a distinction between 'events' and 'conduct' of the defendant occurring after the initial sentencing insofar as the kind of information that may be relied upon to show a nonvindictive motive is concerned.* This is clear from *Williams v. New York*, 337 U.S. 241[, 93 L. Ed. 1337, 69 S. Ct. 1079] (1949), which provides that the underlying philosophy of modern sentencing is to take into account the person as well as the crime by considering 'information concerning every aspect of a defendant's life.' [Citation omitted.]"

"Even without a limitation on the type of factual information that may be considered, the requirement that the sentencing authority or prosecutor detail the reasons for an increased sentence or charge enables appellate courts to ensure that a nonvindictive rationale supports the increase. A contrary conclusion would result in the needless exclusion of relevant sentencing information from the very authority in whom the sentencing power is vested." (Emphasis added.) 468 U.S. at 571-72.

.. It is significant to note that the *Wasman* Court specifically found that the trial judge

" 'followed precisely the procedural steps of *Pearce*, affirmatively stating on the record his reason for enhancing the sentence, basing that reason on objective information concerning identifiable conduct of the defendant, and making the factual data on which his action was based part of the record so that its constitutional legitimacy [may] be fully reviewed on appeal. [Citation omitted.]' " 468 U.S. at 563.

Applying the above principles, we conclude that the presumption of vindictiveness applies in this case. We must, therefore, determine whether the trial court, in its final sentence, articulated on the record the reason for the more severe sentence. The record of resentencing shows that the defendant requested that the judge not impose a more severe sentence than before, in that he should not be "penalized because he prevailed" before the Supreme Court.

The defendant offered testimonial evidence from his mother and his fiancee, and from letters all pointing to his change of attitude as a result of 3 years' incarceration. The State offered evidence relating to the original presentence investigation report (PSI). Within 30 days from the original sentence, a Topeka Correctional Facility (TCF) report was prepared, which was not available to the original sentencing court. However, the information contained in the TCF report was some 3 years old and closely tied to the defendant's attitude at the time of the original sentence. An addendum report was prepared and dated just prior to the imposition of the new enhanced sentence imposed in 1995, but this report contained no information concerning the defendant except as to the sentences already imposed.

Upon resentencing, the trial court did not mention the original sentence imposed and did not explain its reasoning for imposing a more severe sentence. The judge's only reply was that he had ample opportunity to review the file and would address the factors listed in K.S.A. 21-4606 because the sentences to be imposed in this case "will be in excess of the very minimum that could be imposed." The trial judge then reviewed the defendant's criminal history and the circumstances of this crime.

The court then reviewed the only evidence not available at the original sentencing: the report from the TCF prepared within 30 days from imposition of the original sentence. The court cited to the report's indication that the defendant continued to deny involvement in the crime. The court stated the report "characterizes the defendant as anything but remorseful," although no such description appears in the report. The court also emphasized the report's statement that the defendant came across to the evaluator as "a smiling, egocentric, irrationalizing [sic] and uninsightful young man," and that the defendant's testing revealed "feelings of hostility, rebelliousness and . . . amorality." The court concluded that the defendant is a danger to public safety and should be removed from society to protect the public.

The final sentence of the court was based primarily upon information contained in the original PSI report. No new PSI report was prepared, and the addendum submitted to the court contained no updated information concerning any aspect of the defendant's life over the past 3 years of his incarceration. The trial court did not make reference to the first, more lenient sentence imposed.

Because the court did not articulate a reason on the record for the new enhanced sentence and relied primarily upon information that was obviously considered in the imposition of the original sentence, and because, in this case, there is a presumption of vindictiveness according to *Pearce* and *Wasman*, the record contains no objective information concerning identifiable conduct of the defendant for the enhanced sentence. Under these circumstances, the defendant's right to due process is violated, not because the sentence is enhanced, but because no evidence was introduced to rebut the presumption that actual vindictiveness was behind the increased sentence. In other words, by operation of law, the increased sentence is deemed to be motivated by vindictiveness and must be set aside.

## Habitual Criminal Act

The incident giving rise to the criminal charges in this case occurred on November 6, 1992, prior to the July 1, 1993, effective date of the Kansas Sentencing Guidelines Act.

In the original case, the court held a hearing on April 19, 1993, to address whether the Habitual Criminal Act should be imposed. The trial court considered evidence of several prior convictions of the defendant. The evidence revealed two prior cases: (1) 87 CR 90A, in which the defendant was convicted of two counts of burglary and one count of felony theft; and (2) 87 CR 1520A, in which the defendant was convicted of one count of aggravated assault and one count of felony criminal damage to property.

In 87 CR 90A, the felony theft was committed on December 28, 1986, and the burglaries were committed on November 28, 1986. The defendant pleaded guilty to these charges on May 13, 1987.

In 87 CR 1520A, the aggravated assault was committed on August 17, 1987; the felony criminal damage to property was committed on August 5, 1987. The defendant pleaded guilty to and was convicted of these crimes on November 18, 1987.

The State requested that the court apply the Habitual Criminal Act in the following manner: (1) an enhanced sentence for Rinck's aggravated robbery conviction because there was one prior Article 34 conviction for a crime against a person (aggravated assault in 87 CR 1520A), and (2) an enhanced sentence for Rinck's aggravated burglary conviction because there were two prior Article 37 convictions for crimes against property (three offenses under 87 CR 90A counted collectively as one prior crime, and criminal damage to property in 87 CR 1520A). Over objection of the defense, the trial court imposed the Habitual Criminal Act sentence as requested.

At resentencing on May 1, 1995, the trial court considered and used the court's findings in the original sentencing hearing regarding the Habitual Criminal Act. The trial court applied the sentencing factors of K.S.A. 21-4606, which had been lacking in the record of original sentencing (the omission causing this court to vacate the sentences and remand for resentencing). The trial court then imposed the enhanced sentences of 10 to 20 years for aggravated burglary and 20 years to life for aggravated robbery, to run consecutive to each other and to the other sentences imposed in 87 CR 90A and 87 CR 1520A.

The defendant argues the trial court imposed an illegal sentence in that it "bifurcated" the convictions in 87 CR 1520A to enhance the sentences for the two separate convictions in this case. The court used all convictions obtained in 87 CR 90A as a single prior conviction and one of the convictions obtained in 87 CR 1520A as a second prior conviction to enhance the present sentence for aggravated burglary. The court also used another one of the convictions obtained in 87 CR 1520A as a prior conviction to enhance the present sentence for aggravated robbery.

More specifically, the defendant asserts the court imposed the sentence for aggravated burglary first, so 87 CR 1520A was "used up" at that point and could not lawfully have been used to enhance the sentence for aggravated robbery. As a result, the defendant requests that this court vacate the 20 years to life sentence for aggravated robbery and impose a sentence of no more than 15 years to life. An additional argument, not emphasized by the defendant, would be that 87 CR 1520 was "used up" when it was used to enhance the sentence for aggravated robbery, so the other conviction in that case could not be used to enhance the sentence for aggravated burglary. This approach, however, would not benefit the defendant since it challenges the 10- to 20-year sentence, rather than the 20 years to life sentence, and would not effectively change the controlling sentence.

The defendant challenges the court's imposition of sentence and raises an issue of statutory construction as to the Habitual Criminal Act. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

The Habitual Criminal Act as it appeared at the time the present crimes were committed provided:

"(a) If a defendant is convicted of a felony specified in article 34, 35 or 36 of chapter 21 of Kansas Statutes Annotated, the punishment for which is confinement in the custody of the secretary of corrections after having previously been convicted of any such felony or comparable felony under the laws of another state, the federal government or a foreign government, the trial judge may sentence the defendant as follows, upon motion of the prosecuting attorney:

"(1) The court may fix a minimum sentence of not less than the least nor more than twice the greatest minimum sentence authorized by K.S.A. 21-4501 and amendments thereto, for the crime for which the defendant is convicted; and

"(2) the court may fix a maximum sentence of not less than the least nor more than twice the greatest maximum sentence provided by K.S.A. 21-4501 and amendments thereto, for the crime.

"(b) If a defendant is convicted of a felony specified in article 34, 35 or 36 of chapter 21 of Kansas Statutes Annotated having been convicted at least twice before for any such felony offenses or comparable felony offenses under the laws of another state, the federal government or a foreign government, the trial judge shall sentence the defendant as follows, upon motion of the prosecuting attorney:

"(1) The court shall fix a minimum sentence of not less than the greatest nor more than three times the greatest minimum sentence authorized by K.S.A. 21-4501 and amendments thereto, for the crime for which the defendant is convicted; and

"(2) the court may fix a maximum sentence of not less than the least nor more than three times the greatest maximum sentence provided by K.S.A. 21-4501 and amendments thereto, for the crime.

"(c) If a defendant is convicted of a felony other than a felony specified in article 34, 35 or 36 of chapter 21 of Kansas Statutes Annotated having been convicted at least twice before for any such felony offenses or comparable felony offenses under the laws of another state, the federal government or a foreign government, the trial judge shall sentence the defendant as follows, upon motion of the prosecuting attorney:

"(1) The court shall fix a minimum sentence of not less than the greatest nor more than two times the greatest minimum sentence authorized by K.S.A. 21-4501 and amendments thereto, for the crime for which the defendant is convicted; and

"(2) the court may fix a maximum sentence of not less than the least nor more than two times the greatest maximum sentence provided by K.S.A. 21-4501 and amendments thereto, for the crime." K.S.A. 1992 Supp. 21-4504.

The defendant relies upon *State v. Lohrbach*, 217 Kan. 588, 538 P.2d 678 (1975), as support for his contention that "bifurcating" convictions within a prior case is illegal. Lohrbach was convicted of three felony offenses occurring during the early hours of April 11, 1973: burglary, felony theft, and felony damage to property. Based upon four prior convictions introduced by the State, and on which the trial court relied in passing sentence against the defendant as a three-time offender under the Habitual Criminal Act, we reversed as to the sentence, concluding that the four previous convictions could only be used as one prior conviction. *Lohrbach*, in reaching this result, followed the general rule prevailing throughout the country as expressed in Annot., 24 A.L.R.2d 1262, Habitual Criminal Statutes § 9:

"The majority of the cases in which the courts have construed statutes which, in substance, provide for enhancement of the punishment of one previously convicted, hold that where there were two or more convictions on as many indictments or on two or more counts in the same indictment, only one of them may subsequently be utilized as a previous conviction within the contemplation of habitual criminal statutes." 217 Kan. at 593.

*State v. Wilson*, 230 Kan. 287, 634 P.2d 1078 (1981), involving a similar issue, was heard by this court on a grant of review of a Kansas Court of Appeals' decision in *State v. Wilson*, 6 Kan. App. 2d 302, 627 P.2d 1185, *aff'd* 230 Kan. 287, 634 P.2d 1078 (1981). We approved the Court of Appeals' decision. In *Wilson*, the sentences arose out of convictions on April 29, 1980, for burglary and felony theft committed on December 10, 1979. The sentences were enhanced under the Habitual Criminal Act. The State's evidence introduced in support of sentence enhancement established that on August 10, 1977, the defendant was convicted in Barton County District Court on a charge of felony theft committed on May 29, 1977. The evidence also established that on December 20, 1977, the defendant was convicted in Ellsworth County District Court on the charge of forgery; the date of commission of that offense was not known. Under the evidence, when Wilson committed the felony offenses for which he was convicted, he had previously been convicted of two felonies. From this evidence, the trial judge tripled Wilson's sentence.

The Court of Appeals, speaking through Judge Rees, stated:

"[In *State v. Lohrbach*] as disclosed by the opinion, the record on appeal and the appellate briefs, the defendant's sentences for convictions on July 11, 1973, of three felony offenses committed April 11, 1973, were enhanced upon evidence of convictions on November 23, 1965, in four cases charging a total of seven felony offenses—two committed April 3, 1965, and apparently growing out of a single act; two committed April 23, 1965, and apparently growing out of a single act; two committed October 7, 1965, and apparently growing out of a single act; and one committed October 7, 1965, but apparently not growing out of the same act as that out of which the other two offenses committed that same date arose. It was held Lohrbach was subject to sentence only as a second offender." 6 Kan. App. 2d at 304-05.

Each of the four cases in which Lohrbach was convicted on November 23, 1965, concerned offenses growing out of separate

single acts. Consonant with the statement in *State v. Murray*, 200 Kan. 526, 530, 437 P.2d 816 (1968), that because two offenses grow out of a single act, the actor has not become a habitual offender, the seven convictions were treated as four convictions obtained on the same date.

The essential holding in *Lohrbach* is that multiple convictions obtained on the same date can be used only as a single conviction for the purpose of sentence enhancement under 21-4504. 217 Kan. at 593; see 6 Kan. App. 2d at 305. In *Wilson*, 6 Kan. App. 2d at 306, Judge Rees concluded:

"Our case law has pronounced that where there are convictions for multiple offenses growing out of a single act or transaction, or where there are multiple convictions obtained on the same date for offenses committed at different times and places, the multiple convictions can be used only as a single conviction for the purpose of sentence enhancement. Where both situations exist, as in *Lohrbach*, the rule is the same. The common denominator of these rules is that sentence enhancement requires conviction prior to commission of the subsequent offense, the requirement we have noted as legislatively and judicially made applicable to enhancement of sentence of a defendant as a second offender."

We see little difference between the case we now consider and *Lohrbach*. In *Lohrbach*, we set forth the philosophy of the Habitual Criminal Act:

"The basic philosophy underlying recidivist statutes might be expressed in this fashion: where the punishment imposed against an offender for violating the law has failed to deter him from further infractions, a harsher and more severe penalty is justified, the idea being, hopefully, that the greater punishment may serve as an object lesson and cause him to accomplish his reformation, where the lesser penalty had failed in that respect." 217 Kan. at 591.

Bifurcation of the prior felonies resulting in convictions on the same date in 87 CR 1520A violates the basic philosophy of the Habitual Criminal Act. In this case, the multiple prior convictions in 87 CR 1520A (aggravated assault and felony criminal damage to property) obtained on the same date for offenses committed at different times or places can be used only as a single conviction for the purpose of sentence enhancement. As stated in *Lohrbach*, 217 Kan. 588, Syl. ¶ 3: "Where two or more convictions occurring on the same day result either from two or more counts in the same

information or from counts in two or more information, only one of them may be used as a former conviction to enhance punishment under the provisions of K.S.A. 21-4504(1) and (2) (Weeks 1974)."

The trial court erred when it bifurcated the two convictions in 87 CR 1520A, using one conviction to enhance the aggravated robbery conviction and the other to enhance the aggravated burglary conviction. The two prior convictions in 87 CR 1520A can be used as one previous conviction and, once used, none of the convictions on that date may be used again to enhance. Our holding is perhaps one of last impression and will not affect many cases. However, upon remand for resentencing, the court may use the prior felony convictions in 87 CR 1520A to enhance the present aggravated robbery conviction or the aggravated burglary conviction, but it cannot use both prior convictions on a bifurcated basis to enhance both present convictions.

Vacated and remanded for resentencing in accord with this opinion.