IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,751

STATE OF KANSAS,
*Appellee*,

v.

WYATT G. BROWN,
*Appellant*.

SYLLABUS BY THE COURT

A criminal defendant's due process rights are violated if he or she receives a more severe sentence only because of a prior successful appeal.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 17, 2016. Appeal from Brown District Court; JOHN L. WEINGART, judge. Opinion filed March 1, 2019. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is vacated, and the case is remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, argued the cause, and *Carol Longenecker Schmidt*, was with him on the briefs for appellant.

*Kevin M. Hill*, county attorney, argued the cause, and *Derek Schmidt,* attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This case involves allegedly vindictive resentencing on remand after a successful criminal appeal. Because we determine that defendant Wyatt G. Brown's due

1

process rights were violated when he received more prison time, we vacate his sentence and remand to the district court for another resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Wyatt G. Brown originally was sentenced to 360 months' imprisonment after he pleaded no contest to one count of aggravated sodomy in violation of K.S.A. 2017 Supp. 21-5504(b)(1). In order to arrive at this sentence, the district judge was required to grant two departures—first from life with a mandatory minimum under Jessica's Law to the Kansas Sentencing Guidelines grid for nondrug offenses, and second from the range of 554 months to 618 months in the applicable grid box to the 360-month term. To justify the first departure, the judge cited Brown's entry into a plea agreement under which the State would not appeal any sentence of at least 360 months' imprisonment and Brown's waiver of a trial in which the victim would have been compelled to testify.

A panel of our Court of Appeals vacated Brown's sentence on appeal because the district judge had stated his reasons for the first departure on the record but had not done so for the second departure, as required by K.S.A. 2017 Supp. 21-6815(a). *State v. Brown*, No. 110,709, 2014 WL 7152331, at *1-2 (Kan. App. 2014) (unpublished opinion) (*Brown I*). The panel stated:

> "If a Jessica's Law sentence is vacated and a remand ordered for resentencing, the district court may reevaluate the factors bearing on sentencing, including adding to them, and regrant or deny a departure from Jessica's Law and a dispositional departure from the default guidelines sentence to probation, as well as a durational departure." 2014 WL 7152331, at *3 (citing *State v. Spencer*, 291 Kan. 796, 819, 248 P.3d 256 [2011]).

2

On remand, the same judge sentenced Brown to 372 months of imprisonment. The following excerpts from the transcript of the resentencing hearing are pertinent to the issue before us today:

"THE COURT: . . . [P]art of the plea agreement was that the State would not appeal a sentencing of 360 months, if I made my notes correct; is that right?

"[PROSECUTION]: Yes, I believe so.

. . . .

"THE COURT: But today the State would still like to ask for the 618 months; is that right?

"[PROSECUTION]: Yes.

"THE COURT: And the victims would—are in agreement with your recommendations?

"[PROSECUTION]: Well, yes. And I think what we are going to discuss today, though, is that at the Court's sentencing, cooperation was a big part of that, and the fact that [Brown] hadn't put the victim through extra trauma. And I think they're going to address the fact that this has caused extra heartache and trauma to the family, the fact that now we're back again for sentencing, and—

"THE COURT: Did—

"[PROSECUTION]: —his actions as a result of that.

"THE COURT: —the appeal?

"[PROSECUTION]: Yes.

3

"THE COURT: Of course, we don't know exactly how much of that was the defendant's fault and how much it was from an overzealous public, appellate public defender in terms of what they did in this case. I mean, essentially, my understanding of what the trial court was trying to do was the trial court had two seasoned attorneys, a seasoned prosecutor, a seasoned defense counsel who worked out a very difficult case to avoid the necessity of a youth having to testify, and the plea agreement gave parameters to the Court, and the Court found that the plea agreement was . . . appropriate. And the Court sentenced accordingly."

At this point, the victim's mother was permitted to make a statement.

"[J.M.]: This resentencing and Mr. Brown's appeal has revictimized our child and the entire family. We thought the past sentencing date was this family's closure, that we could all start to heal. (Crying.)

. . . .

"[J.M.]: . . . This all being brought . . . has brought back all the original fear, anxiety, fear of [being] threatened, unsafe, emotional duress, and mental anguish. It has further inconvenienced us to come to court, causes more financial burden to ourselves, as well as the State of Kansas. It's like he violated our baby all over again.

"Our family thought that Mr. Brown's original sentence was more than generous. Thirty years was doable since our child didn't have to testify and face him. He agreed with the plea, not to appeal the sentencing, yet here we are going today.

"Facing him again is very difficult, difficult in that for some reason he feels the injustice in this case is to him which in fact it is to our daughter.

"She, as we—as were we, slowly beginning the healing process. Resurfacing— sorry. Resurfacing this just put the healing back to square one.

4

"This family, our child especially, will carry this with us and her the rest of our lives. There will always be some thing that triggers it all back up to the front again, be it a sound, a smell, someone that resembles him. No amount of time or therapy is going to make this all disappear. It may go into a[n] off limits place in our minds, but it will never go away.

"Mr. Brown wants fair. Well, where is fair for our child, for our family?

"At this time we as a family for our child would like to ask the Court to consider the further damage this has done to our child and our family. We would like to see further time added."

The judge and the prosecutor then continued:

"THE COURT:  . . . All right. [Does the State] have any additional statements or arguments that you would like to make?

"[PROSECUTION]:  Yes, your Honor, and I—You know, I understand the appellate defender chose their tactic, but the defendant's the one who decided that he needed to file the appeal, knowing—I mean, he's savvy enough with his prior criminal history to know that this would result in possibly a resentencing of this case. And that's what's happened.

"I think that's—You know, we still think 618 months is fair given the fact that he had committed a serious sexual offense prior to this one. And he—It's not like he's an old person. I think at the time of [the first] sentencing in this case the defendant was 24 years old, and yet he had already committed a very serious offense.

"So at the very least, we're asking the Court to impose more time than what was imposed at the [first] sentencing. Even though we're asking for 618 months I do think some additional time is warranted. I think the Court of Appeals acknowledged that when they indicated that the Court may reevaluate the factors bearing on sentencing, including adding to them, or regrant or deny a departure from Jessica's law and a dispositional

5

departure from the default guidelines to probation, as well as a durational departure. So I think the Court of Appeals recognizes that.

"I think the major finding that this Court made was cooperation and not putting the victim through trauma. He has now done that.

. . . .

"And—despite the fact the defendant has I think violated the spirit of this [plea agreement], we're not going to, because I think it's important for, you know, the victim not to have to be put through the trauma on this case, and that's the only reason that we're—

"THE COURT:  So, so the State is not objecting to a granting of the departure from off-grid to grid; is that correct?

"[PROSECUTION]:  That's correct."

The judge then discussed sentencing with defense counsel.

"[DEFENSE]:  Judge, I—While I can appreciate some of the statements made by the victim in the matter, I think it really kind of doesn't comport with how this particular matter was handled by both my office and the appellate defender's office.

"Appeal is a matter of right. And I think the Court will recall, Mr. Brown's psychological condition had deteriorated over the time he'd spent in the Brown County Jail. Frankly, I had the opportunity to speak with him on an ongoing basis, as far as the plea and the sentencing in this matter.

"What it takes at the end of a case, because I'm appointed by this Court to represent Mr. Brown, is that I have to file an appeal, unless he knowingly can consent and waive the right to file an appeal. I frankly was uncomfortable accepting any waiver

6

from Mr. Brown at the time he was sentenced in this matter, thus the appeal had to be filed, acquired by my duty as court-appointed counsel.

"Mr. Brown has, and I have discussed his contact with the appellate defender during the pendency of the appellate case in this matter. He was kept up-to-date with the status of the appellate case by letter from the appellate defender. At no time did he actually . . .

. . . .

" . . . At that time, no time during the pendency of the appellate case did he actually speak with a member of the appellate defender's office.

"THE COURT: He did not?

"[DEFENSE]: He was kept up-to-date with the progress of his case by letter. He was not a, as far as I'm aware, a factor in the decision, the arguments that were made in front of the appellate court.

"I believe the way the appellate court opinion was written, the Court used the same mitigating circumstances that it used to make the departure in granting the departure from Jessica's Law to the grids. The same factors can be made to grant further down to 360 months, as the Court did. I think it would be a severe injustice to this young man to penalize him further because of the actions of his court-appointed counsel or because the appellate defender chose to make such an argument in front of the appellate court.

. . . .

"THE COURT: I'm just kind of curious as to why the appellate public defender would argue that the Court did not make its findings for an off-grid to a grid sentencing when that did nothing but benefit the defendant? Why would they bring that issue up on appeal?

"[DEFENSE]: I haven't spoken with the appellate defender that handled the case, your Honor. Frankly, I agree that he has been placed in a tremendous position to be at further jeopardy than he was at the original sentence in this matter.

"THE COURT: I mean, it seemed like if anybody to appeal that the sentencing procedure was not appropriate, it should have been the State and not the defendant in that situation.

. . . .

"[DEFENSE]: And frankly, I don't think he's violative of the plea agreement of this matter by filing an appeal that wasn't a requirement of the plea agreement in the matter.

"[PROSECUTION]: Well, your—I just want the record to reflect the fact that Mr. Brown's a grown man; he's not a child. He's the one that directed the appeal. Whether he communicated or not, I know that the appellate defender communicates via letter. He had the opportunity to address that back to them if he was not comfortable with it.

"And the simple fact is this has resulted in extra trauma for the victim and her family, who thought this was closed. And I—I think that—He's not being punished because it's a guideline sentence, and the guideline sentence calls for 554 to 618.

"THE COURT: Right.

"[PROSECUTION]: And the only reason I think the Court looked at a durational departure was the fact that the victim was spared further trauma.

"THE COURT: Right.

"[PROSECUTION]: Which is not the case now. She has had further trauma, and that's a simple fact, so it's definitely deserving of more time than the 360, whatever the Court feels is just.

8

. . . .

"[PROSECUTION]: It's not a punishment. I think it's a recognition of the fact that the victim has had extra trauma since arraignment."

The judge further remarked, "I wonder what the rationalization was of the public appellate defender to put this defendant back in harm's way again in terms of a greater sentence. I just don't understand that."

The judge then pronounced Brown's new sentence. He granted a departure from the Jessica's Law life sentence to the sentencing grid, stating that elimination of the need for the victim's trial testimony and the plea agreement's recommendation of the first departure constituted substantial and compelling reasons supporting his decision. He relied on the same reasons when he reconsidered the durational downward departure from the applicable guidelines range. He granted that departure as well but sentenced Brown to 12 additional months in prison. He said:

"The, the quandary that the Court finds itself in, on one hand—I mean, I really understand what the victim's mom is telling me. I really, really do.

"On the other hand, I got the feeling, based on my observation of Mr. Brown in court several times and the presentence investigation, that probably the arguments made on his behalf at the appellate public level are arguments which he did not control or have input in, more than likely.

. . . .

"But I do understand what the victim is telling me . . . the Court now sentences the defendant to 372 months with the Department of Corrections."

Brown's defense counsel then questioned the judge about why Brown received the additional 12 months. The judge replied, "The—I don't think—No more than just it's an appropriate legal sentence, and the Court considered all the factors in the, in the Sentencing Guidelines relative to durational departure."

Again, Brown appealed. A divided Court of Appeals panel affirmed the longer sentence. *State v. Brown*, No. 113,751, 2016 WL 3407807, at *8 (2016) (unpublished opinion) (*Brown II*).

The majority concluded no presumption of vindictiveness applied and that Brown's case was analogous to *State v. Gilliland,* No. 109,046, 2014 WL 1302616 (Kan. App. 2014) (unpublished opinion), in which a defendant's higher sentence on remand was held not vindictive because the first sentence was illegal. Because Brown's first sentence was illegal under Kansas law, that sentence could not be used as a starting place for his second sentence. In addition, Brown could not show actual vindictiveness based on the record provided. *Brown II*, 2016 WL 3407807, at *8.

Judge Michael B. Buser dissented, writing that "a plain reading of the transcript manifestly shows the *only* reason Brown's punishment was increased was because he exercised his statutory right to appeal his illegal sentence." 2016 WL 3407807, at *9 (Buser, J., dissenting). In Judge Buser's view, the district judge failed to note any new circumstance that would legitimately justify a longer prison sentence. To the extent any reason was articulated, it came from the victim's mother and the prosecutor, and they advocated for a longer sentence purely because of Brown's successful appeal. Imposition of the longer sentence thus violated Brown's due process rights. 2016 WL 3407807, at *13-15 (Buser, J., dissenting).

On petition for review to this court, Brown agrees with Judge Buser, arguing the longer sentence violates his due process rights and conflicts with United States Supreme Court caselaw and this court's precedent.

DISCUSSION

We must first answer whether this issue is properly before us. Brown raised the constitutionality of his sentence for the first time before the Court of Appeals. *Brown II*, 2016 WL 3407807, at *1. Ordinarily, a party is not permitted to raise an issue for the first time on appeal, but there are three recognized exceptions:

> "(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason." *State v. Gomez*, 290 Kan. 858, Syl. ¶ 2, 235 P.3d 1203 (2010).

We agree with the panel that resolution of this issue "is necessary to serve the ends of justice," *Brown II*, 2016 WL 3407807, at *4, and therefore turn to the substance of Brown's case.

"A criminal sentence that is within statutory limits will not be disturbed on appeal absent a showing of abuse of discretion or vindictiveness on the part of the sentencing court." *State v. Cooper*, 275 Kan. 823, Syl. ¶ 5, 69 P.3d 559 (2003).

The United States Supreme Court originally articulated a prohibition against judicial vindictiveness in *North Carolina v. Pearce*. Defendant Clifton A. Pearce successfully appealed his felony conviction, and at resentencing, the same judge who had sentenced Pearce the first time resentenced him to eight years in prison—a longer

11

sentence than the one originally imposed. *North Carolina v. Pearce*, 395 U.S. 711, 713, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

The Court held that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." 395 U.S. at 726. The Court's underlying rationale was simple:  punishing those who appeal may unconstitutionally chill the appeals process and "due process . . . requires that a defendant be freed of apprehension" of retaliation. 395 U.S. at 725. To mitigate the potential for vindictiveness, the Court required that the reasons for any increased punishment "be based on objective information concerning identifiable conduct on the part of the defendant." 395 U.S. at 726; see *Texas v. McCullough*, 475 U.S. 134, 141-43, 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986) (information from before, after first trial may be used to justify enhancement). And the information used to increase the sentence must be in the record so that meaningful appellate review can occur. See *Pearce,* 395 U.S. at 726. The Court held that a presumption of vindictiveness applied in the case before it.

The Supreme Court elaborated on the contours of this presumption in the decades that followed the *Pearce* decision. See, e.g., *Colten v. Kentucky*, 407 U.S. 104, 119-20, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) (presumption not applicable in two-tiered trial system where defendant appeals for de novo trial; different courts in first, second trial); *Chaffin v. Stynchcombe*, 412 U.S. 17, 18, 26-27, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) (presumption does not apply when different jury imposes increased sentence on retrial; jury has "no motivation to engage in self-vindication"); *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974) (presumption applied; court concerned with punishment posing "a realistic likelihood of 'vindictiveness'"); *Wasman v. United States*, 468 U.S. 559, 572, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984) (defendant given more severe sentence for separate conviction occurring between first, second sentencing; presumption does not apply); *McCullough*, 475 U.S. at 138-40 (presumption does not

12

apply when judge in first trial grants motion for new trial, does not apply when "significant evidence" not before first sentencer); *Alabama v. Smith*, 490 U.S. 794, 801, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) (presumption does not apply when sentence imposed after trial more severe than one imposed after earlier guilty plea; information brought out in trial often more detailed than information supporting guilty plea). In short, the Supreme Court has said it is permissible for a sentencer to impose a harsher punishment on resentencing, subject to certain constitutional restrictions.

This court has applied the presumption of judicial vindictiveness in only one case. In that case, *State v. Rinck*, 260 Kan. 634, 645, 923 P.2d 67 (1996), the sentencing court failed to articulate a reason on the record for an increased sentence on remand, relying "primarily upon information that was obviously considered in the imposition of the original sentence." 260 Kan. at 645. Defendant Christopher Rinck had successfully challenged his convictions on appeal, and at resentencing after remand, Rinck effectively received double the time he would have spent in prison. We could not confidently conclude that a nonvindictive justification for the increase existed. See 260 Kan. at 637, 644-45. There was "no objective information concerning identifiable conduct" in the record to justify the higher sentence, and so the presumption of vindictiveness applied "by operation of law." 260 Kan. at 645.

Even if we were reluctant to apply a presumption of vindictiveness in this case, we would still be compelled to grant Brown the relief he requests on the necessarily undisputed record before us. Actual vindictiveness, in the legal sense of the phrase, infected Brown's resentencing. Although we are confident the district judge bore no personal ill will toward Brown, subjective malevolence is not required. Under the United States Supreme Court decisions and our *Rinck* case, it is enough that Brown was deliberately penalized for the exercise of a legal right to appeal and his success in that effort.

13

The district judge, while stating substantial and compelling reasons for both departures, failed to state a reason for giving Brown a 12-month increase. This silence is punctuated with his expression of sympathy for the mother of the victim and his explicit acknowledgement that he understood what she was telling him. The discussion of Brown's successful appeal and the impact it had on the victim and her family is extensive, and the victim's mother explicitly asked for more prison time to be added to Brown's sentence *because* of his appeal and the additional pain and suffering that it caused. The prosecutor, apparently unaware that he was leading the court into error under *Pearce* and its progeny, echoed this request, saying "some additional time is warranted" after blaming Brown for bringing the parties back to court. As Judge Buser accurately pointed out, Brown's successful appeal is the *only* reason articulated for the increase in prison time. This situation is entirely distinct from that before us in *Spencer*, the case quoted by the Court of Appeals panel majority. See *State v. Spencer*, 291 Kan. 796, 248 P.3d 256 (2011). That case identified factual and legal problems with the items the sentencing judge had relied upon to establish substantial and compelling reasons for departure. This necessitated total reevaluation from the beginning for an appropriate sentence to be pronounced on remand. Here, the problem with the original sentence was not what the judge did but what he did not do on the second departure. At the sentencing after remand, the judge corrected this earlier, limited error but he made another one. He simply was not free to lengthen Brown's prison term because of his successful appeal.

CONCLUSION

Because it is clear that 12 months of Brown's prison term is an artifact of his success on his first appeal, we vacate his sentence. This case is remanded for resentencing consistent with this opinion.