NOT DESIGNATED FOR PUBLICATION

No. 128,667

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEREMY R. STOVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Brown District Court; LAURA JOHNSON-MCNISH, judge. Submitted without oral argument. Opinion filed February 27, 2026. Affirmed.

*John R. Kurth,* of Kurth Law Office Incorporated, P.A., of Atchison, for appellant.

*Kevin M. Hill,* county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

HURST, J.: Jeremy R. Stover pled no contest to six misdemeanors related to sexual misconduct. At sentencing the district court mischaracterized the victims as Stover's employees. The court then sentenced Stover, and counsel identified the court's erroneous characterization of Stover's relationship with the victims. The court corrected that statement, but then misstated Stover's relationship with the victims by referring to them as Stover's patients. The court did not change Stover's sentence. Stover later moved for reconsideration, relying, in part, on the court's misstatements regarding Stover's relationship to the victims. The court denied the motion, and Stover appeals.

1

At sentencing, the district court misstated some of the relationships between the victims and Stover because only two of the six victims had an employment type of relationship with Stover and one victim had a patient-like relationship with Stover. However, as the district court explained, it focused on the power Stover had over his victims, which is supported by the record. Even after counsel notified the district court of its misstatements—the court left its sentence unchanged because of Stover's position of power over the vulnerable victims. Stover fails to demonstrate the district court abused its discretion in sentencing, and this court affirms.

FACTUAL AND PROCEDURAL BACKGROUND

Stover, a hospice nurse and related business owner, pled no contest to three counts of buying sexual relations, in violation of K.S.A. 21-6421, and three counts of sexual battery, in violation of K.S.A. 21-5505, all class A person misdemeanors. The plea agreement did not address sentencing. According to the presentence investigation report, Stover had not previously been convicted of a crime.

The district court held a sentencing hearing in December 2024 where the State discussed the facts underlying the convictions and some of the victim impact statements. Specifically, the State discussed one victim who sought employment from Stover, one victim with a drug addiction who sought pain treatment from Stover, and a third victim who was "of limited intellect" who needed money for diapers for her children. The State discussed the position of trust or power that Stover held with each of these victims and how he used that to extract sexual acts from them. The State also discussed Stover's admission that he had engaged in this behavior before. The State requested that the district court impose a 12-month sentence for each count, with at least three counts to be served consecutively. The State also requested that no probation be considered until Stover served at least half of his jail sentence.

2

Stover's counsel discussed Stover's time in the military, his post-traumatic stress disorder and the treatment and counseling he received, his cooperation with law enforcement, and his service to the community. Counsel requested the district court suspend any jail sentence and either place Stover on probation or allow him to be placed under house arrest or in a work release program.

Stover also spoke about his 21 years of service in the military as a medic and his 27 years of service in the ambulance service. Stover denied wanting to hurt anyone and expressed regret for his conduct. He spoke generally about his "problems," the need to "seek the treatment," and that he had become jaded after military service. When questioned by the court, Stover described his condition as an "impulse control issue" for which he received medication. Stover also discussed his nursing license and why he sought work release.

The district court referenced its authority under K.S.A. 21-6604 and its consideration of "the possibility of whether [Stover] could reform through the VA services provided, the harm and culpability of this case, and what sentence would be proportional under [K.S.A.] 21-6819." The court explained it "considered this matter from the perspective of deterring others from committing like crimes." The court also reviewed the letters submitted on Stover's behalf and the victim impact statements. The court then discussed Stover's relationship to his victims and characterized them as employees:

> "All the victims in this case appear to have been employees of the defendant. They've been described to the Court as vulnerable. The defendant's own statement on video would indicate he did seek vulnerable employees such as crackheads.
>
> "The Court observes that the defendant as an employer yielded some measure of power over his employees. It appears from the victim impact statements these employees initially looked up to the defendant and wanted to learn from him on how to

3

professionally care for others.

"The Court observes from their statements that the defendant's actions vastly undermined his employees [*sic*] trust in him and in healthcare. The defendant was in a leadership position in healthcare and he exploited that position.

"It appears to the Court that the defendant used his business to gather and psychologically cage prey, and that was the primary focus of his life until he was caught. This case was filed I believe in February 2023. This case shows the defendant repeatedly engaged in destructive behavior towards his employees.

"It would appear to the Court that competing healthcare providers would condemn the defendant's behavior. Like public service healthcare providers take an oath to serve others and follow the laws and regulations. That's our duty. That's our responsibility in positions such as these. The defendant not only failed in that duty but he caused harm. He caused destruction in his own profession. He set a bad example in his profession. He yielded long standing negative impacts on the lives of young people seeking to make a difference in the healthcare field. As the county attorney pointed out, the facts in this case and the victim impact statements indicate, and Mr. Stover even your own statements that I saw on video, indicate you really had no respect for others."

Following this recitation, the district court sentenced Stover to 12 months of imprisonment for each count, with all sentences to be served consecutively. The court ordered Stover to serve 24 months of his sentence, with 12 months of probation to follow and an underlying 4 years of suspended jail time.

When the district court offered the State the opportunity to seek additional conditions for Stover's probation, the State clarified that none of the victims were Stover's employees but "they had sought employment from him and then some had sought treatment from him." Stover's counsel also indicated that none of the victims were Stover's employees but that two had sought employment, and questioned "if that would make a difference" in the sentencing. The court responded by noting that "if they were

4

patients they were even more vulnerable than if they were employees." The court declined to alter Stover's sentence, and neither party added any clarification.

Shortly after sentencing, Stover moved for reconsideration of his sentence, alleging reasons he believed he should have received a "lesser period of jail time." One of the issues Stover raised was the district court's misstatements that the victims were Stover's employees or patients. The district court denied the motion. The district court noted that Stover "was a veteran and a highly regarded business owner in the community" and that "[a]s a medical professional, [Stover] was viewed as a person who cared about the well-being of others and had advanced medical knowledge and expertise to help vulnerable people." In addressing the issue of Stover's relationship to the victims, the district court explained that Stover was in a unique position of trust with access to vulnerable individuals:

> "The file shows the Defendant's business was instrumental in his sex-seeking efforts. The file and the record show the Defendant told law enforcement that guys like him go after crackheads, acknowledging it is because they have no credibility. The file shows the Defendant sexually pursued financially strapped individuals, people seeking employment, a person in pain, a person whose car battery was dead. The record shows one victim had limited intellect. The file shows the Defendant initially approached the victims in this case to 'help' them, be that financially, benevolently, or through medical treatment—but what he demanded in return sexually was not freely given by the victims. Each victim felt exploited, manipulated, and broken. Each victim statement expressed the destructive effect the Defendant had on their life.

> ". . . The Defendant, even at sentencing, seemed unaware of the harm he has caused the victims in this case. The Defendant seems to view every sexual encounter he initiates as mutual . . . The Defendant may well have had mutual sexual encounters, but not always. The facts surrounding the six (6) victims in this case show the Defendant planned, initiated, and coerced six (6) vulnerable people into sexual relations, causing them psychological harm."

The district court then summarized reasons supporting its sentence: "Given the number of victims, the power the Defendant held, and the harm he caused, the Court imposed a maximum sentence for each victim, consecutively." However, the court noted that it only required Stover to serve two years before being placed on probation. In addressing its misstatements regarding the victims' status as either employees or patients, the district court clarified that the victims were vulnerable and Stover was in a position of power:

> "[T]he Court finds that whether employees, patients, or targeted vulnerable people, the Defendant's culpability and the harm he caused are the same when it comes to determining a proportionate sentence. The Defendant held the power in the relationships, he targeted vulnerable people, the victims suffered harm. The Court finds no change in sentence is merited."

Stover appeals.

## DISCUSSION

Stover contends the district court abused its discretion in ordering him to serve 24 months in jail because the sentence was based on an error of fact. The Kansas Sentencing Guidelines Act does not proscribe a sentencing grid for misdemeanor convictions like Stover's here, and thus his sentence is not considered a presumptive sentence under the Guidelines. See *State v. Huff*, 277 Kan. 195, 196-97, 83 P.3d 206 (2004). Accordingly, this court has authority to review the district court's sentencing decision. See K.S.A. 21-6820(c) (prohibiting appellate review of presumptive sentences). A district court is authorized to sentence a person convicted of a misdemeanor "to jail for the term provided by law." K.S.A. 21-6604(a)(1). For a class A misdemeanor, such as Stover's convictions here, the district court may order the defendant to serve up to one year in jail for each conviction. K.S.A. 21-6602(a)(1). Additionally, the district court has authority to run misdemeanor offenses consecutively. See K.S.A. 21-6606(a).

6

An appellate court reviews a district court's imposition of a non-guidelines sentence under an abuse of discretion standard. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). Stover, as the party asserting the district court abused its discretion, bears the burden of showing such abuse. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

A sentencing judge has broad discretion to impose an appropriate sentence within the legally permissible boundaries. *State v. Frecks*, 294 Kan. 738, 742, 280 P.3d 217 (2012). "'A criminal sentence that is within statutory limits will not be disturbed on appeal absent a showing of abuse of discretion or vindictiveness on the part of the sentencing court.' [Citation omitted.]" *State v. Brown*, 309 Kan. 369, 375, 435 P.3d 546 (2019). Stover does not argue his sentence stems from partiality, prejudice, oppression, or corrupt motive. Rather, he maintains the district court "abused its discretion by imposing a sentence based upon an error of fact." An error of fact constitutes an abuse of discretion when "substantial competent evidence does not support a finding of fact on which the exercise of discretion is based." *State v. Smith*, 299 Kan. 962, 970, 327 P.3d 441 (2014).

At sentencing the district court referred to the victims as "employees" multiple times, mentioned Stover's "negative impacts on the lives of young people seeking to make a difference in the healthcare field," and expressed frustration about Stover's use of "his business to gather and psychologically cage prey." When counsel clarified that not all the victims were seeking employment and none were employees, the district court shifted to a statement identifying the victims as patients. There is, however, not substantial competent evidence that all the victims were Stover's employees or patients.

The record indicates one victim sought employment from Stover and one was a former employee. It also shows that Stover preyed on one victim after learning she was

7

unemployed and searching for work, and Stover offered to help her earn money and then abused her. Neither of these victims were technically employees—although both needed employment and knew Stover to be a potential employer. One victim reported in their impact statement that they sought pain treatment from Stover, who offered to help her with pain while seemingly extorting sexual acts. This victim arguably had a patient-like relationship with Stover, who was a hospice nurse, but there is nothing in the record suggesting any other victims were patients. Thus, the district court's identification of the victims as Stover's employees or patients was a factual error, except at least partially regarding four of the six victims. The issue here is whether the district court relied on these errors for its sentencing decision.

During sentencing, the district court focused on the power dynamic between Stover and the victims. Inherent in the power difference between Stover and his victims is his status within the community as a business owner, employer, and healthcare provider. The court also highlighted the vulnerability of the victims as people who needed money, employment, or were suffering from addiction. The court noted Stover's position of power and respect as a business owner in the healthcare field, and his abuse of that position and the profession, which includes a duty of care. The court's identification of the victims as Stover's employees or patients related to this identified power gap.

While the court's identification of the victims as employees and patients was not factually accurate, the court accurately determined that Stover used his position of power and influence to prey on vulnerable victims. Stover's position as an employer and healthcare provider gave him access to those types of victims. In an interview with police, Stover indicated he pursued women addicted to drugs as victims because authorities would be less likely to believe them over him. The State discussed three victims who were all facing financial or healthcare struggles and sought help from Stover in his capacity as a business owner and healthcare provider. One victim relied on Stover to pay her utility bills in exchange for sex. The record supports the district court's finding

8

that Stover used his position to exert power and influence over his victims, and that power stemmed from his position as an employer and healthcare provider.

Additionally, the record shows that counsel made the district court aware of its error regarding the victims' status as employees and the court had the opportunity to reconsider its sentencing decision. That distinguishes this case from others relied on by Stover. See *State v. West*, No. 119,634, 2019 WL 3756201, at *3 (Kan. App. 2019) (unpublished opinion) (where the panel found the district court committed an error of fact but could not determine whether the error was determinative and so vacated and remanded the matter for resentencing); *State v. Grado*, No. 114,120, 2017 WL 945459, at *11-12 (Kan. App. 2017) (unpublished opinion) (vacated sentence and remanded when appellate panel could not determine whether court relied on factual error in sentence). Unlike the panels in *Grado* and *West*, this court can find that the district court did not rely on a factual error in its sentencing decision.

After counsel notified the district court at sentencing about the mistake in identifying the victims as employees, the court explained its belief that the victims' vulnerability supported its sentencing. Moreover, the district court's reasoning in its order denying reconsideration clarifies the determinative facts for its sentencing decision. The district court noted that Stover pursued people who needed help, "financially, benevolently, or through medical treatment," but due to his actions each victim felt "exploited, manipulated, and broken." The district court also stated "that whether employees, patients, or targeted vulnerable people, [Stover's] culpability and the harm he caused are the same when it comes to determining a proportionate sentence. [Stover] held the power in the relationships, he targeted vulnerable people, the victims suffered harm."

The district court understood the operative facts, including the facts supporting its sentencing decision—and those were not so specifically tied to the victims' status as

9

literal employees or patients, but to their vulnerable financial and health status relative to Stover.

CONCLUSION

While the district court made factual misstatements that *all* Stover's victims were his employees or patients, some had employment-related or patient-like relationships with Stover. The court's focus was not on the definition of victims as employees or patients, but the power dynamic and vulnerability of the victims who sought employment, financial assistance, or medical treatment from Stover, who was in a position of power in that regard. That power differential was determinative for the court. Stover failed to demonstrate that the district court's sentencing decision was based on a factual error. Thus, this court finds no abuse of discretion.

Affirmed.